**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Darcy L. Ibach, Esq. (to be admitted *pro hac vice*)
550 West Adams Street – Suite 300
Chicago, Illinois 60661
(312) 345-1718 telephone
(312) 345-1778 facsimile
darcy.ibach@lewisbrisbois.com

-and-

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Brian Deeney, Esq. (Attorney ID: 021022011)
One Riverfront Plaza, Suite 800
Newark, NJ 07102
Brian.Deeney@lewisbrisbois.com
973.792.8726

*Attorneys for the Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COURT OF NEW JERSEY**
**NEWARK DIVISION**

| | | |
|---|---|---|
| DREW J. BAUMAN and | ) | |
| LAW OFFICE OF DREW J. BAUMAN | ) | |
| | ) | |
| Plaintiffs | ) | Case No.: 2:22-cv-4551 |
| | ) | Judge Claire C. Cecchi |
| | ) | Magistrate Judge James B. Clark |
| v. | ) | |
| | ) | |
| THE HANOVER INSURANCE GROUP, | ) | |
| THE HANOVER INSURANCE COMPANY | ) | |
| AND USI INSURANCE SERVICES, LLC | ) | |
| | | |
| Defendants | | |

**DEFENDANTS THE HANOVER INSURANCE COMPANY and**
**THE HANOVER INSURANCE GROUP INC.'S**
**BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

    A.    THE ALLEGATIONS OF PLAINTIFFS' COVERAGE COMPLAINT ..............2

    B.    THE UNDERLYING LAWSUIT – WOERNER CLAIM ......................................3

    C.    THE POLICY ......................................................................................4


II.    ARGUMENT ....................................................................................5

    A  LEGAL STANDARD ......................................................................5

    B. THE NEW JERSEY RULES OF POLICY INTERPRETATION.................................7

    C. THE POLICY DOES NOT REQUIRE HANOVER TO PROVIDE A
DEFENSE FOR THE UNDERLYING LAWSUIT AND THE BREACH OF
CONTRACT CLAIM FAILS BECAUSE THERE IS NO COVERAGE UNDER
THE POLICY. .................................................................................9

    D. PLAINTIFFS' BAD FAITH CLAIM MUST BE DISMISSED BECAUSE
PLAINTIFFS CANNOT WIN JUDGMENT AS A MATTER OF LAW ON   THEIR
CLAIM FOR COVERAGE……………………………………………...     .14

III.    CONCLUSION…………………………………………………………..17

## Table of Authorities

*ABL Title Ins. Agency, L.L.C. v. Maxum Indem. Co.*,
    Civil Action No. 15-7534 (CCC), 2022 U.S. Dist. LEXIS 61391 (D.N.J. Mar. 31, 2022) .... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... 6

*Att'ys Liab. Prot. Soc'y, Inc. v. Whittington Law Assocs., P.L.L.C.*,
    961 F. Supp. 2d 367 (D.N.H. 2013) ................................................................. 12

*Authentic Title Servs. v. Greenwich Ins. Co.*,
    No. 18-4131 (KSH) (CLW), 2020 WL 6739880 (D.N.J. Nov. 17, 2020) ............................ 11

*Banco Popular N. Am. v. Gandi*,
    184 N.J. 161 (2005) ........................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 6

*Borzillo v.Borzillo,*
    259 N.J. Super. 286 (Ch. Div. 1992) ................................................................ 14

*Buczek v. Cont'l Cas. Ins. Co.*,
    378 F.3d 284 (3d Cir. 2004) ............................................................................. 8

*Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ........................................................................... 5

*Connelly v. Lane Constr. Corp.*,
    809 F.3d 780 (3d Cir. 2016) ............................................................................. 7

*Dean v. New Eng. Mut. Life Ins. Co.*,
    No. 14-2211 (FLW)(DEA), 2015 U.S. Dist. LEXIS 10244 (D.N.J. Jan. 29, 2015) .............. 14

*Flomerfelt v. Cardiello*,
    202 N.J. 432 (2010) .................................................................................. 8 , 11

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ............................................................................. 7

*Fox v. State Farm Fire & Casualty Co.*,
    No. 2:20-cv-18131 (BRM) (ESK), 2021 U.S. Dist. LEXIS 184787 (D.N.J. Sep. 24,
2021)…………………………………………………………………………..……...15

*Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*,
    Civil Action No. 20-8676 (FLW) (DEA), 2021 U.S. Dist. LEXIS 50985 (D.N.J. Mar. 18, 2021) ............................................................................................................ 8

*Helms v. Hanover Ins. Grp. Inc.*,
    No. CV-20-01728-PHX-DWL, 2021 U.S. Dist. LEXIS 158183 (D. Ariz. Aug. 20, 2021) ... 13

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984) ............................................................................................ 6

*Iacaponi v. New Amsterdam Cas. Co.*,
    379 F.2d 311, 311-312 (3d Cir. 1967) .......................................................... 5

*Longobardi v. Chubb Ins. Co.*,
    582 A.2d 1257 (N.J. Sup. Ct. 1990) .............................................................. 8

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004) .......................................................................... 5

*McDonough v. Horizon Blue Cross Blue Shield of N.J.*,
    Civil Action No. 09-571 (SRC), 2009 U.S. Dist. LEXIS 93642 (D.N.J. Oct. 7, 2009) .......... 7

*Mem'l Props., L.L.C. v. Zurich Am. Ins. Co.*,
    46 A.3d 525 (N.J. Sup. Ct. 2012) ................................................................ 7

*Morgan Stanley Dean Witter & Co. v. Chubb Grp. of Ins. Companies*,
    No. A-4124-03T2, 2005 N.J. Super. Unpub. LEXIS 798, 2005 WL 3242234 (N.J. Super. Ct. App. Div. Dec. 2, 2005) ..............................................................................13

*N.J. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*,
    Civil Action No. 11-CV-0630 (DMC)(JAD), 2011 U.S. Dist. LEXIS 149162 (D.N.J. Dec. 27, 2011) ...................................................................................................... 16

*Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*,
    160 A.3d 1263 (N.J. 2017) ............................................................................ 7

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .......................................................................... 5

*Pickett v. Lloyd's*,
    131 N.J. 457 (1993) ................................................................................ 14, 15

*Progressive Cas. Ins. Co. v. Hurley*,
    765 A.2d 195 (N.J. Sup. Ct. 2001) ................................................................ 8

iii

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*,
   181 F.3d 410 (3d Cir. 1999) ................................................................................ 5

*Tarsio v. Provident Ins. Co.*,
   108 F. Supp. 2d 397 (D.N.J. 2000) ......................................................................15

*YAPAK, L.L.C. v. Mass. Bay Ins. Co.*,
   No. 3:09-cv-3370, 2009 U.S. Dist. LEXIS 96361 (D.N.J. Oct. 16, 2009) ........................ 7, 17


Fed. R. Civ. P. 12 ................................................................................................... 1,5

Defendants The Hanover Insurance Company and The Hanover Insurance Group Inc. submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12 (b)(6).

## I.       INTRODUCTION

Plaintiffs' Complaint seeks coverage under the Hanover Insurance Company policy for the "Woerner Claim" which is a claim involving what is now a well-known fraud incident in which a fraudster penetrates an email chain to a real estate transaction and instructs the buyer to wire transfer funds to a differing account so that the funds can be misappropriated. At issue is a policy purchased by Plaintiff, Law Office of Drew J. Bauman, for lawyer's professional services. Defendants The Hanover Insurance Company, and its parent company, The Hanover Insurance Group Inc.,  move to dismiss under Fed. R. Civ. P. 12(b)(6), because as demonstrated below, Hanover Insurance Company, which issued the policy, is not contractually obligated to provide Plaintiffs a defense since the claims alleged against them by the buyer, Jim Woerner, is based upon, arises out of, or is in any way related to the transfer, payment or delivery of funds caused or induced by a trick, artifice or the fraudulent misrepresentation of a material facts, all of which claims are expressly excluded by the Hanover policy.

Because the policy does not afford coverage for the Woerner Claim, Hanover Insurance Company (and its parent, The Hanover Insurance Group Inc.) is not in breach of contract for having denied Plaintiffs a defense to the lawsuit. Nor does it have a duty to defend or indemnify Plaintiffs in regard to the Woerner Claim/lawsuit and is further not in bad faith for its actions in denying coverage.  Accordingly, as there exists no coverage under the policy, Plaintiffs' claims against Hanover Insurance Company and Hanover Insurance Group Inc. are legally insufficient and as such, Plaintiffs' Complaint is subject to dismissal.

1

### A.    THE ALLEGATIONS OF PLAINTIFFS' COVERAGE COMPLAINT

Plaintiffs purchased a lawyers' professional liability insurance policy LHY D729578-00 from Hanover Insurance Company for a policy period from 10/17/2018 to 10/17/2019. (Doc. 1 at Ex. 2, ¶ 2– Facts Common to All Counts ). See Deeney Cert. at **Exhibit A**.

James Woerner filed a suit against Plaintiffs in the Superior Court of New Jersey, Law Division, Monmouth County entitled *James Woerner v. Drew J. Bauman, et al*, docket No. MON -L-3086-19, seeking damages arising out of Plaintiffs' representation of Woerner in a real estate transaction – the "Woerner Claim".   (Doc. 1 at Ex. 2,  ¶ 3 – Facts Common to All Counts). See Deeney Cert. at **Exhibit B**.

Plaintiffs tendered the Underlying Lawsuit Complaint  to Hanover under the policy seeking a defense and indemnification. (Doc. 1 at Ex. 2, ¶ 5– Facts Common to All Counts).  Hanover Insurance Company denied a defense.  (Doc. 1 at Ex. 2, ¶ 6– Facts Common to All Counts). On 9/18/2019, Hanover denied the 9/12/2019 tender based on policy Exclusion O. See Deeney Cert. at **Exhibit C**.

Plaintiffs brought this suit against The Hanover Insurance Company and The Hanover Insurance Group Inc. seeking coverage for the Woerner Claim under the policy (Doc. 1 at Ex. 2). Plaintiffs' suit against The Hanover Insurance Company and The Hanover Insurance Group Inc. is set forth in two Counts.  In Count 1, seeking a "declaration"  on the policy that The Hanover Insurance Group Inc. and The Hanover Insurance Company owe a duty to provide a defense and indemnification under the policy and for reimbursement of defenses costs and expenses incurred on the Woerner Claim and for reimbursement of defense and expenses incurred on the Woerner Claim and for damages, interest and attorney fees incurred in the prosecution of this coverage action. (Doc. 1 at Ex. 2, Count 1, ¶ Wherefore clause).  In Count 2, seeking compensatory damages,

punitive damages, and counsel fees, incurred in this action as a result of The Hanover Insurance Company and The Hanover Insurance Group Inc. bad faith  willful and wanton refusal to defend and indemnify Plaintiffs on the Woerner Claim.  (Doc. 1 at Ex. 2, Count 2, ¶ 5 and Wherefore Clause).

### B.    THE UNDERLYING LAWSUIT – WOERNER CLAIM

Woerner filed a suit against Plaintiffs on August 29, 2019 in the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. MON-L-3086-19 (the "Underlying Lawsuit" or "Woerner Claim"). See Deeney Cert at Exhibit B.

The Underlying Lawsuit alleges one Count of negligence against Drew J. Bauman and the Law Office of Drew J. Bauman. See Deeney Cert at Exhibit B, Count 1. In Count 1: Negligence, Woerner alleges that: Bauman breached its duties by a failing to protect his funds, by failing to have a secure email account and computer, by failing to prevent unauthorized email use by third parties, by failing to have in place a method of confirming instructions for wire transfer and orally confirming the receipt of the intended party for the funds wire transferred, and by failing to prevent a cyber-attack. Due to this negligence,  DEF Cyber Thief was able to hack into Bauman's email system and gain access to the email communications between Bauman and Woerner.  The incident allegedly occurred because DEF Cyber Thief drafted a fraudulent email purporting to originate from Bauman's office which was delivered to Woerner. The fraudulent email instructed Woerner to send funds by wire transfer to a bank account under the control of DEF Cyber Thief. In reliance upon "Bauman's" representations that said email instructions came from plaintiff's attorney, Woerner wire transferred the money to the specified account i.e. to the account controlled by said DEF Cyber Thief. Woerner requested that Bauman reimburse Woerner for the stolen funds, which was refused which, thus, led Woerner to bring this lawsuit against Bauman. See Deeney Cert, at Ex. B, Count 1 ¶ 3, 4, 5, 6, 7, 9.

C.    **THE POLICY**

Plaintiffs seek coverage for the Underlying Lawsuit under The Hanover Insurance

Company policy, A.1. Professional Services Coverage. See Deeney Cert at Ex. A. In pertinent

part, the policy states:

**I. INSURING AGREEMENTS**
A.1. Professional Services Liability
The **Insurer** will pay on behalf of the **Insured**, **Loss** which the **Insured** is legally obligated to pay
due to a **Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting
Period if applicable, arising from a **Wrongful Act** in the rendering or failure to render **Professional
Services**, provided that:
1. The **Wrongful Act** must have first occurred on or after the applicable Retroactive Date(s);
2. The **Insured** had no knowledge of the **Claim** or facts which could have reasonably caused
   such **Insured** to foresee the **Claim**, prior to the effective date of this Policy; and
3. The **Claim** or **Potential Claim** is reported to the **Insurer** pursuant to Section X. Reporting.

**III. DEFINITIONS**

**Professional Services** means:
A. Services as a lawyer, mediator, arbitrator, notary public, administrator, conservator, receiver,
executor, guardian, trustee, or in any similar fiduciary capacity, but only if the services rendered
are those ordinarily performed by a lawyer; . …

**Wrongful Act** means any actual or alleged negligent act, error, omission, misstatement, misleading
statement, breach of duty, **Publishing Offense** or **Personal Injury Offense** committed or
attempted, or allegedly committed or attempted, or a **Privacy Breach** or **Security Breach** allowed,
by an **Insured** in the rendering of, or failure to render **Professional Services** or **Non-Profit
Services**. All **Related Wrongful Acts** shall be considered a single **Wrongful Act** and all **Related
Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful
Acts** occurred whether prior to or during the **Policy Period**.

**IV. EXCLUSIONS**
This insurance does not apply to **Loss** for any **Claim:**

O. False Pretenses
Based upon, arising out of or in any way related to the transfer, payment or delivery of funds,
money or property caused or induced by trick, artifice, or the fraudulent misrepresentation of a
material fact (including but not limited to social engineering, pretexting, phishing, spear phishing
or any other confidence trick).

**VII. DEFENSE AND SETTLEMENT OF CLAIMS**
A. The **Insurer** shall have the exclusive right and duty to defend any **Claim** covered by this
   Policy even if any allegation of such **Claim** is groundless, false or fraudulent. . . .The **Insurer**
   has no duty to defend any **Claim** or pay **Defense Expenses** for **Claims** to which this insurance
   does not apply.

4

## II.  __ARGUMENT__

### A.  LEGAL STANDARD

Defendants The Hanover Insurance Company and The Hanover Insurance Group Inc.

move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) .  Under Fed. R. Civ. P. 12(b)(6) , a

complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." *Id.*

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true,

construe the complaint in the light most favorable to the plaintiff, and determine whether, under

any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty.*

*of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted).

On a motion to dismiss, courts consider "allegations in the complaint, exhibits attached to

the complaint, matters of public record, and documents that form the  basis of a claim." *See Banco*

*Popular N. Am. v. Gandi*, 184 N.J. 161, 183 (2005) (quoting *Lum v. Bank of Am.*, 361 F.3d 217,

222 n.3 (3d Cir. 2004), *cert. denied*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  A document "forms the

basis of a claim" when it is "'integral to or explicitly relied upon in the complaint.'" *Lum v. Bank*

*of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (quoting *Burlington Coat Factory Sec. Litig.*, 114

F.3d 1410, 1426 (3d Cir. 1997)). Such documents, as well as documents specifically referenced in

the complaint, may be examined "to see if it contradicts the complaint's legal conclusions or factual

claims." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 427

(3d Cir. 1999). Prior litigation referred to in the complaint may be considered. *See Iacaponi v. New*

*Amsterdam Cas. Co.*, 379 F.2d 311, 311-312 (3d Cir. 1967); *Lum*, 361 F.3d at 222 n.3.  One

purpose behind this rule "is to avoid the situation where a plaintiff with a legally deficient claim

that is based on a particular document can avoid dismissal of that claim by failing to attach the

relied upon document." *Lum*, 361 F.3d at 222 n.3 (citation omitted). A plaintiff "cannot prevent a

court from looking at the texts of the documents on which its claim is based by failing to attach or

explicitly cite them." *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). In this instance, the Underlying Lawsuit Complaint (see Deeney Cert. at Ex. B), the policy (see Deeney Cert. at Ex. A), and the denial letter (see Deeney Cert. at Ex. C) are referred to and/or integral to the allegations in the Complaint and are relied on in  the Motion to Dismiss although said documents were not attached to the Plaintiffs' Complaint.

A district court should grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citation omitted).  While the Court must take all factual allegations made in a complaint as true, the United States Supreme Court heightened a plaintiff's pleading requirements in  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  In order to survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true." *Id.* at 555 (internal quotations and citations omitted).

Specifically, a plaintiff's claim must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face" such that the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Notably, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."

6

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

For a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Plaintiffs' complaint fails to provide the factual grounds entitling it to relief for breach of contract and for declaratory relief in Count 1. Although Plaintiffs alleges the existence of a valid contract (the Policy), the first element of its claim, Plaintiffs fail to allege any facts concerning the terms of the Policy, or how or why the Policy was breached. Plaintiff also fails to allege what, if any, damages -- the amount covered under the Policy -- resulted from Hanover's breach.  Dismissal is proper.   *See YAPAK, L.L.C. v. Mass. Bay Ins. Co.*, No. 3:09-cv-3370, 2009 U.S. Dist. LEXIS 96361 (D.N.J. Oct. 16, 2009) (dismissing complaint because "Plaintiff has not alleged any facts concerning the terms of the contract or the loss at issue"); *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, Civil Action No. 09-571 (SRC), 2009 U.S. Dist. LEXIS 93642 (D.N.J. Oct. 7, 2009) (dismissing complaint lacking facts to support each element of claim).

B.      **THE NEW JERSEY RULES OF POLICY INTERPRETATION**

Insurance policies "will be enforced as written" and terms "are given their plain and ordinary meeting." *Mem'l Props., L.L.C. v. Zurich Am. Ins. Co.*, 210 N.J. 512, 46 A.3d 525, 532 (N.J. Sup. Ct. 2012). When interpreting an insurance policy, "courts first look to the plain meaning of the language at issue*." Oxford Realty Group Cedar v. Travelers Excess & Surplus Lines Co.,* 229 N.J. 196, 160 A.3d 1263 (2017)  (citing *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*,

948 A.2d 1285, 1289 (N.J. 2008)). "If the language is clear, that is the end of the inquiry." *Id.* New Jersey courts "will not manufacture an ambiguity where none exists." *Oxford Realty Grp. Cedar*, 160 A.2d at 1270 ; *Longobardi v. Chubb Ins. Co*., 121 N.J. 530, 582 A.2d 1257, 1260 (1990) "[I]n the absence of an ambiguity, a court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." *Oxford Realty Grp. Cedar*, 160 A.2d at 1270 (citing *Chubb Custom Ins. Co*., 948 A.2d at 1289); *Progressive Cas. Ins. Co. v. Hurley*, 166 N.J. 260, 765 A.2d 195, 202 (2001).

Interpretation of the contract and its legal effect are questions of law for the court to decide. In the absence of statutory provisions to the contrary, insurers have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy. New Jersey courts have repeatedly emphasized that courts must enforce the plain meaning of unambiguous terms in an insurance policy.

> Under New Jersey law, the determination of "the proper coverage of an insurance contract is a question of law." *Buczek v. Cont'l Cas. Ins. Co*., 378 F.3d 284, 288 (3d Cir. 2004) (citing *Atl. Mut. Ins. Co. v. Palisades Safety & Ins. Ass'n*, 364 N.J. Super. 599, 604 (App. Div. 2003)). "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010).

*Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, Civil Action No. 20-8676 (FLW) (DEA), 2021 U.S. Dist. LEXIS 50985 (D.N.J. Mar. 18, 2021).

Although a court must narrowly construe exclusions under New Jersey law, the precedent nonetheless requires the enforcement of unambiguous exclusionary provisions. Of particular importance, in the context of exclusions, an ambiguity does not arise merely because the parties to the insurance contract have offered conflicting interpretations of a term's meaning.

> "[i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" Id. (quoting *Longobardi*, 121 N.J. at 537). In that regard, courts cannot "disregard the 'clear import and

intent' of a policy exclusion," *Am. Motorists Ins. Co. v. L-C-A Sales Co*., 155 N.J. 29, 41 (1998) (citation omitted), and "[f]ar-fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." *Essex Ins. Co. v. New Jersey Pan-African Chamber of Commerce & Indus., Inc.,* No. A-1237-14T3, 2017 WL 4051726, at *3 (N.J. Super. Ct. App. Div. Sept. 14, 2017). "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." *Flomerfelt*, 202 N.J. at 442 (quoting *Stafford v. T.H.E. Ins. Co*., 309 N.J. Super. 97, 105 (App. Div. 1998)).

*Id..*

The obligation to defend the insured is triggered whenever there is a reasonable possibility that the allegations in the complaint will lead to coverage.  The duty to defend can be overcome if the insurer can establish that there is no possible legal or factual basis that might lead to coverage.

**C.   THE POLICY DOES NOT REQUIRE HANOVER TO PROVIDE A DEFENSE FOR THE UNDERLYING LAWSUIT AND THE BREACH OF CONTRACT CLAIM FAILS BECAUSE THERE IS NO COVERAGE UNDER THE POLICY.**

Plaintiffs seek a declaration that The Hanover Insurance Company and The Hanover Insurance Group Inc. are in breach of the policy by failing to defend and indemnify Plaintiffs on the Underlying Lawsuit. However, Hanover is not required to provide a defense to Plaintiffs for the Underlying Lawsuit because a policy exclusion clearly and unambiguously applies to the claims asserted and precludes coverage for it.

The claims against Plaintiffs and its alleged damages exist only because the funds which their client intended to be used for the purchase of a home were misappropriated, by a fraudster who employed forged emails on payment instructions. As the allegations in the Underlying Lawsuit arises from the wire transfer of funds based on a fraud, policy Exclusion O., applies to preclude coverage for the Underlying Lawsuit. This conclusion is supported by New Jersey decisions.

The policy states that Hanover "will pay on your behalf those sums which you become legally obligated to pay as damages and claims expenses" … "arising from a wrongful act in the

rendering of or failure to render professional service", but "If a claim is not covered under this policy, we will have no duty to defend it."  It is of no moment that Woerner cast the claims in terms of negligence for failure to secure an email account, install protective software and prevent the email account from being used by unauthorized third parties, and/or failure to contact the recipient of the transferred proceeds, as each of the claims still are based upon or arise out of, or result directly or indirectly from the transfer, payment or delivery of funds caused or induced by a trick, artifice or the fraudulent misrepresentation of a material fact, including phishing and/or spear phishing, for the home purchase. Because the Underlying Lawsuit alleged claim seeks damages for the wired funds as a result of the hack to Bauman's email system, which resulted in the DEF Cyber Thief stealing $50,450.98,  it is indisputable that the loss arises out of or is based upon or relates directly or indirectly to the transfer of funds due to a trickery. Thus, there is no coverage afforded for the claim under the policy based on Exclusion O and Plaintiffs' demand for a declaration of coverage and damages is due for dismissal.

The Underlying Lawsuit plainly arises out of a claim against Plaintiffs for acts proximately caused by a fraudster's misappropriation of funds through a wire transfer.  Any way you slice it, coverage for the Underlying suit is precluded by the language in Exclusion O. Exclusion O  applies to "Loss for **any** Claim" "based upon", "arising out of" "or in any way related to" "the transfer….of funds---"caused or induced by trick artifice or the fraudulent misrepresentation of a material fact". Notably "arising out of" is a term of art that is given significant breadth under New Jersey  law. Under New Jersey law, in the context of a policy exclusion, the phrase "arising out of" is unambiguous, and is interpreted broadly to mean "originated from", "grew out of", or "had a substantial nexus to". *Authentic Title Services v. Greenwich Ins. Co.,* No. 18-4131 (KSH) (CLW), 2020 U.S. Dist. LEXIS 215018 (D.N.J. Nov. 17, 2020); *Flomerfelt v. Cardiello*, 202 N.J. 432, 997

A.2d 991, 1004 (2010) (exclusion will apply when there is a substantial nexus between the excluded conduct and the claim).  As there is a substantial nexus between the claim and the wire transfer of funds due to trickery, there is no coverage.

The Underlying Lawsuit explicitly alleges claims arising out of wire transferred money which the DEF Cyber Thief "stole". Coverage is excluded for any claims where the injuries alleged are caused by the excluded conduct. New Jersey law is clear that negligence claims deriving from an excluded activity are themselves excluded.  The focus of an exclusion is the injury, not the pleaded cause of action. When the allegations raised against the party seeking coverage do not exist separate and apart from the excluded action, there is no coverage.  Here, there is a "substantial nexus" in the failure to protect Plaintiffs' client from the fraudster and the incurred damages associated with the wire transfer of funds "stolen" by DEF Cyber Thief.   The Underlying Lawsuit allegations are excluded by Exclusion O.

In  *Authentic Title Services v. Greenwich Ins. Co*., No. 18-4131 (KSH) (CLW), 2020 U.S. Dist. LEXIS 215018 (D.N.J. Nov. 17, 2020), this court reviewed a spoofing scam wherein the title agent sought coverage under its E&O policy for the $480,000 that an insured transferred pursuant to fraudulent instructions. The insurer denied coverage based on an exclusion for any claim arising out of "the commingling, improper use, theft, stealing, conversion, embezzlement or misappropriation of funds or accounts." Citing New Jersey courts' expansive definition of the phrase "arising out of" this court held the claim "undeniably originated from, grew out of or had a substantial nexus to funds belonging to the lender that were transferred into the Fraudulent Account and then were withdrawn by a person or entity other than [the lender] and were never recovered".  The court determined that the exclusion broadly encompassed conduct by the insured or a third party, and found that the exclusion "unambiguously precluded coverage for a third

party's misappropriation or theft of funds," and that the wording says nothing about who must engage in the theft or misappropriation of funds, pointing to a District of Connecticut case applying a similar exclusion on similar facts. *See Accounting Resources, Inc. v. Hiscox, Inc.,* No. 3:15-cv-01764 (JAM), 2016 U.S. Dist. LEXIS 135450 (D. Conn. Sep. 30, 2016). *See also Att'ys Liab. Prot. Soc'y, Inc. v. Whittington Law Assocs., P.L.L.C.*, 961 F. Supp. 2d 367 (D.N.H. 2013) (upheld similar exclusion where insured firm was victim of a Nigerian check scam and funds were misappropriated by a third party).

Likewise, in *ABL Title Ins. Agency, L.L.C. v. Maxum Indem. Co.*, Civil Action No. 15-7534 (CCC), 2022 U.S. Dist. LEXIS 61391 (D.N.J. Mar. 31, 2022), this court held that a conversion exclusion barred coverage under a professional liability policy for multiple claims against an insured title company following a third party wire fraud resulting in the title company having insufficient funds to make customer payments on real estate closings. The insured served as a closing agent for a real estate transaction.  At the closing, the insured issued a check to the seller from its escrow account.  Later that day, a fraudster, impersonating the seller's attorney, sent an email to the buyer's attorney requesting a wire payment in lieu of the check.  The buyer's attorney received the wire instructions from the fraudster and forwarded it to the insured. The insured wired $579,360.48 from its escrow account to the fraudster, who misappropriated the funds. Due to the fraud, the insured paid the sale amount twice, leaving a deficit in its escrow account which led to multiple escrow account checks bouncing due to insufficient funds. In granting summary judgment to the insurer, the court observed the broad interpretation of "arising out of" language in the exclusion confirmed that the claim for insufficient funds against the insured had a substantial nexus to the fraudster's conversion. Further, the insurer observed therein, that the professional

12

liability policy covers errors or omissions in providing professional services, and "such policies across the board do not insure theft." *ABL Title Insurance Agency, LLC* at *19.

> Although it appears that specific fraud/crime policies provide coverage for losses arising from fraudulent transfers and computer fraud, ABL purchased no such policy for the relevant period here. See, e.g., *Morgan Stanley Dean Witter & Co. v. Chubb Grp. of Ins. Companies*, No. A-4124-03T2, 2005 N.J. Super. Unpub. LEXIS 798, 2005 WL 3242234, at *4 (N.J. Super. Ct. App. Div. Dec. 2, 2005) (involving computer crime policy, which provided "coverage unambiguously to situations where an unauthorized person poses as a customer or other authorized person to issue the fraudulent transfer instructions").

Id, at *18-19 (D.N.J. Mar. 31, 2022).  *See also Helms v. Hanover Ins. Grp. Inc.*, No. CV-20-01728-PHX-DWL, 2021 U.S. Dist. LEXIS 158183 (D. Ariz. Aug. 20, 2021), wherein the court held Hanover's False Pretense Exclusion, the same exclusion at issue herein,  negated coverage on a wire transfer of funds to fraudster claim, because the "claim, again, ties all of Plaintiffs' alleged negligent conduct directly to the Thuneys' loss of funds to the fraudsters".  *Id.* at *21.

In this case, the claims against Plaintiffs are likewise construed under a professional liability errors and omissions policy, which likewise precludes coverage for misappropriated funds due to a transfer based on trickery.  Plaintiffs' claims exist only because of the wire transfer of funds which Woerner  intended be used for the purchase of the home. Consequently, and regardless of how the claims at issue are labeled, the policy does not afford coverage for the Underlying Lawsuit, and Hanover has no duty under the policy to defend against it. "If a claim is not covered under this policy, we [Hanover] will have no duty to defend it." <u>See</u> Deeney Cert. at Ex. A, page 8 at B. DEFENSE, SETTLEMENT & EXHAUSTION OF LIMITS. When the allegations raised against the party seeking coverage do not exist separate and apart from the excluded action, there is no coverage. A dismissal in Hanover's favor is warranted.

**D.     PLAINTIFFS' BAD FAITH CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS CANNOT WIN JUDGMENT AS A MATTER OF LAW ON THEIR CLAIM FOR COVERAGE**

An insurer cannot be found liable for denying a claim in bad faith where the basis for the decision to deny the claim is at least reasonably debatable. In other words, if plaintiffs are not entitled to judgment on the claim decision as a matter of law, then there can be no claim for bad faith. Entitlement to judgment as a matter of law on the underlying insurance claim, therefore, is a basic element of a bad faith cause of action. New Jersey law requires facts establishing that the defendant acted with "bad faith" or "ill motive," and with the purpose of depriving Plaintiff of rights or benefits under a contract. *See Dean v. New Eng. Mut. Life Ins. Co.*, No. 14-2211 (FLW)(DEA), 2015 U.S. Dist. LEXIS 10244, at *18 (D.N.J. Jan. 29, 2015) (dismissing claim where plaintiff "failed to allege any bad faith or improper motive at all, let alone that Defendants lacked a 'fairly debatable' reason for failing to pay out any of the Policy's proceeds"). "Bad faith" and "ill motive" mean exactly that - the conscious doing of a wrong for a dishonest purpose. *Borzillo v. Borzillo*, 259 N.J. Super. 286, 292 (Ch. Div. 1992). Not only have plaintiffs failed to allege entitlement to judgment as a matter of law, but the allegations in the complaint and the documents referenced therein affirmatively establish that Hanover's decision to deny plaintiffs' claim  was not only reasonably debatable, but completely proper. Even if the court were to ultimately disagree with Hanover's decision to deny the claim, plaintiffs cannot maintain a cause of action for bad faith, and the Second Cause of Action should, therefore, be dismissed.

"'If a claim [for benefits under an insurance policy] is 'fairly debatable,' no liability in tort will arise.'" *Pickett v. Lloyd's*, 131 N.J. 457, 473 (1993) (citation omitted). In other words, "[i]n the case of denial of benefits, bad faith is established by showing that no debatable reasons existed for denial of the benefits." *Id.* at 481. A claim is "fairly debatable" where there is a question of fact

as to whether or not the claim determination is correct. "[A] question of fact permits an insurer to 'fairly debate' an insured's claim." *Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401 (D.N.J. 2000). Thus, under the standard set forth in *Pickett*, if the plaintiffs are not entitled to judgment as a matter of law with respect to their breach of contract claim, then the Court must dismiss plaintiffs' bad faith claim. *Tarsio,* 108 F.Supp.2d at 401. Under the "fairly debatable" standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith for refusing to pay the claim. *Pickett,* 131 N.J. at 473. Notably, there is no independent "bad conduct" alleged against Hanover, other than the alleged breach of contract. This is insufficient to sustain a claim for breach of the covenant of good faith and fair dealing.

> Finally, "under New Jersey law, '[a] breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action.'" *Irene v. Michael Whaley Interiors, Inc.,* Civ. A. No. 1914998, 2020 U.S. Dist. LEXIS 26331, 2020 WL 759573, at *2 (D.N.J. Feb. 13, 2020) (quoting *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC,* Civ. A. No. 12-3355, 2013 U.S. Dist. LEXIS 162025, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013)); *Oravsky v. Encompass Ins.*, 804 F. Supp. 2d 228, 239 (D.N.J. 2011) (finding plaintiff's claim for breach of the implied covenant of good faith and fair dealing claim failed at the motion to dismiss stage because that claim was "duplicative of [plaintiff's] breach of contract claim")

*Fox v. State Farm Fire & Casualty Co.*, No. 2:20-cv-18131 (BRM) (ESK), 2021 U.S. Dist. LEXIS 184787, at *29 (D.N.J. Sep. 24, 2021).

Based solely upon the facts set forth in the Complaint and the documents referenced in it, it is clear that plaintiffs' claim is, at a minimum, fairly debatable. Plaintiffs' claim for a bad faith denial of insurance coverage is apparently based on nothing more than the fact that Hanover issued a professional liability insurance policy to the insured law firm, the insured represented a client in a real estate matter while the  policy was in effect, the client made a claim against the insured, who reported it to its insurer for coverage and that claim was denied. Hanover's

justifications for denying plaintiffs' claim were put forth in a denial letter to the insured and form the same basis set forth in this motion – that the tendered claim is not covered based on Exclusion O. Plaintiffs' have not pled any facts to rebut the basis for Hanover's claim determination, much less established that it is right and Hanover is wrong as a matter of law.  Because the facts contained in the Complaint and the documents referenced therein clearly show that plaintiffs are not entitled to judgment as a matter of law on  its declaration of breach of contract cause of action, plaintiffs have failed to meet their burden under *Tarsio* and pursuant to *Tarsio*, the plaintiffs' Second Cause of Action must be dismissed. *See N.J. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, Civil Action No. 11-CV-0630 (DMC)(JAD), 2011 U.S. Dist. LEXIS 149162 (D.N.J. Dec. 27, 2011) (dismissing Plaintiff's bad faith claim because Plaintiff could not prevail on summary judgment for the underlying insurance claim as exclusion barred coverage for claim.)

In *Twombly*, the court held that  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The allegations must be plausible, such that there is, "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 1965. Here, plaintiffs do not recite the bare elements of a cause of action for bad faith denial of coverage. The Complaint fails to set forth plausible facts sufficient to raise a right to relief for a bad faith denial of coverage above the speculative level. Plaintiffs' bad faith denial of coverage claims are based solely upon  the blanket assertion of a bad faith denial. However, as in *Twombly,* the defendants' alleged behavior is, at a minimum, also consistent with fair and impartial claims settlement practices. Plaintiffs have not alleged any facts to suggest otherwise. As in *Twombly*, the Complaint does not assert any fact to raise a reasonable expectation that defendants' behavior was illegal or improper. Therefore, as in *Twombly*, plaintiffs' Second Cause

16

of Action should be dismissed. *Accord YAPAK, L.L.C.*, 2009 U.S. Dist. LEXIS 96361 (granting insurer's motion to dismiss bad faith claim where complaint simply listed legal conclusions without factual support)

## III.   CONCLUSION

As Plaintiffs have failed to submit any viable claim for coverage on the Underlying Action based on the facts and law, and for the reasons set forth herein, the Court should grant  Defendants, The Hanover Insurance Company and The Hanover Insurance Group Inc.'s Motion to Dismiss the Complaint with prejudice.

Respectfully submitted,

DATED: July 20, 2022          BY:  *Brian C. Deeney*

Brian Deeney, Esq. (Attorney ID: 021022011)
Lewis Brisbois Bisgaard & Smith, LLP
One Riverfront Plaza, Suite 800
Newark, NJ 07102
Brian.Deeney@lewisbrisbois.com
973.792.8726

**Attorneys for Defendants**
**The Hanover Insurance Group Inc. and**
**The Hanover Insurance Company**

17