# EXHIBIT A



06/23/2022

  KERRIE L. SMITH
  THE HANOVER INSURANCE GROUP
  WORCESTER, MA OFFICE
  MAIL STOP S316

**RE: CERTIFIED COPY OF THE POLICY**

**TO:  WHOM IT MAY CONCERN**

**This is to certify that I am a UNDERWRITER of Citizens/Hanover Insurance Company duly authorized to keep the company's records. The attached copy is certified as a true and correct copy of the company's record of policy.**

 **Policy Number**  LHY D729578 00
**Policy Issued To: Law Office of Drew J Bauman**
 **Date Span:**       10/17/2018 To 10/17/2019

 **Any questions can be initiated in the Process Support Department by contacting  ANNE BONDANZA at 508-855-2799 and DONNA SWANSON at 508-855-3365.**

**Sincerely,**

 MARINA BERTIN

**UNDERWRITER**

440 Lincoln Street ▪ Worcester, MA 01653  *P h o n e* │ 508 - 853 - 7200  *F a x* │ 508 - 853 - 6332
The Hanover Insurance Company  │  Citizens Insurance Company of America

EXHIBIT A w w . H a n o v e r . c o m



HANOVER
# Lawyers Advantage
**Professional Liability Insurance**

### New Jersey RPG Policy Declarations

**NOTICE: THIS POLICY IS WRITTEN ON A CLAIMS-MADE BASIS.  SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE INSURER WILL HAVE NO LIABILITY FOR DEFENSE EXPENSES OR THE AMOUNT OF ANY JUDGEMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  PLEASE READ THE ENTIRE POLICY CAREFULLY**

| Policy Number | The Hanover Insurance Company |
|---|---|
| LHY D729578 00 | 440 Lincoln Street<br>Worcester, MA 01653 |
| | (A Stock Insurance Company, herein called the **Insurer**) |

**RISK PURCHASING GROUP NOTICE**

**This Lawyers Professional Liability Risk Purchasing Group Policy is not protected by an insurance insolvency guaranty fund in this state, and the insurer or Risk Purchasing Group may not be subject to all the insurance laws and rules of this state.**

**IMPORTANT NOTICE REGARDING RISK PURCHASING GROUPS**

**Disclosure Pursuant to Federal Law Regarding Purchasing Groups [15 U.S.C. SEC. 3901, et seq] the USI Affinity Lawyers' Liability Risk Purchasing Group, Inc. is a "Purchasing Group", as defined under Federal law, formed to purchase liability insurance on a group basis for its Members to cover the similar or related liability exposure(s) to which the Members of the Purchasing Group are exposed by virtue of their related, similar, or common businesses or services.  Members do not share limits and each member is provided with its own policy and/or evidence of insurance.**

**Item 1.**   **NAMED INSURED AND ADDRESS**

Law Office of Drew J Bauman
658  Ridgewood  Road
Maplewood, NJ 07040

**Item 2.**   **POLICY PERIOD**

Inception Date: 10/17/2018  Expiration Date: 10/17/2019

(12:01 AM standard time at the address shown in Item 1)



**HANOVER**
# Lawyers Advantage
### Professional Liability Insurance

**New Jersey RPG Policy Declarations**

**Item 3.    INSURING AGREEMENTS**

| Insuring Agreement | Limits | Deductible |
|---|---|---|
| A.1. Professional Services Liability - (*Including Privacy Breach and Security Breach*) | $2,000,000 each **Claim** not to exceed; $2,000,000  Maximum Aggregate | $2,500 each **Claim** N/A all **Claims** |
| A.2. Subpoena Assistance Sublimit | $2,000,000 each **Subpoena** not to exceed; $2,000,000  Maximum Aggregate | $2,500 each **Subpoena** |
| B.  Disciplinary Proceedings | $50,000 each **Disciplinary Proceeding** not to exceed; $100,000  Maximum Aggregate | $0 each **Disciplinary Proceeding** |
| C.  Loss of Earnings | $500   each Day $20,000 each **Insured** $50,000  Maximum Aggregate | Not Applicable |
| D.  Crisis Event Expenses | $25,000 each **Crisis Event** not to exceed; $50,000  Maximum Aggregate | $0 each **Crisis Event** |
| E.  Breach Event Expenses And Cyber Investigation Expenses | $10,000 each **Privacy Event** or **Security Breach** or each **Regulatory Investigation** not to exceed; $20,000  Maximum Aggregate | Not Applicable |
| F.  Reputation Protection Expenses | $25,000 each **Reputation Event** not to exceed; $50,000  Maximum Aggregate | Not Applicable |
| G.  Withheld Client Fee Assistance | $10,000  Maximum Aggregate | Not Applicable |

**Item 4.    RETROACTIVE DATE**:                    **Full Prior Acts**

**Item 5.    PREMIUM**                                                              **$14,811.00**

**State Surcharge\* and Tax:**
New Jersey Property Liability Insurance Guaranty Association:        $0.00
**Total:**                                                                    **$14,811.00**

*\*See State Surcharge Notice(s) to Policyholder, if applicable*

**Item 6.    ENDORSEMENTS EFFECTIVE AT INCEPTION:**  See Schedule of Forms attached.



**HANOVER**

# Lawyers Advantage

**Professional Liability Insurance**

**New Jersey RPG Policy Declarations**

**Item 7.** **NOTICE TO INSURER**

Report a claim to the Company as required to:

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653

**National Claims Telephone Number**:  1-800-628-0250, extension 8556281
**Facsimile:**  508-926-4789
**Email:**  lawyerclaim@hanover.com

---

**Agent on behalf of:**             USI INSURANCE SERVICES LLC

ONE INTERNATIONAL PLAZA
PHILADELPHIA, PA 19113

---

We have caused this Policy to be signed by our President and Secretary and countersigned where required by a duly authorized agent of the Company.

John C. Roche, President

Charles F. Cronin, Secretary



Endorsement

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 1 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

# SCHEDULE OF FORMS

To be attached to and form part of the Policy Number listed above.

| | |
|---|---|
| 913-1901NJ 05/18 | Lawyers Advantage Professional Liability New Jersey RPG Declarations |
| 913-1001 Index 02/17 | Lawyers Advantage Professional Liability Policy Index |
| 913-1001 02/17 | Lawyers Advantage Professional Liability Policy |
| 913-1800 PHN 01/16 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| 913-1801 PHN 01/16 | Customer Notice of Privacy Policy and Producer Compensation Practices Disclosures - Privacy Policy Disclosure |
| 913-1817 PHN 01/16 | Claim Reporting Guidelines |
| 913-1818 PHN 01/16 | Information Regarding Extended Reporting Period Endorsement ("Tail Coverage") |
| 913-1011 01/16 | Schedule of Forms |
| 913-1103 01/16 | Pre-Claim Assistance Coverage |
| 913-1305 01/16 | Exclude Person as Insured Individual |
| 913-1648 12/16 | New Jersey State Amendatory Endorsement DWL |
| 913-1902NJ 05/18 | New Jersey USI Affinity Lawyers Liability |

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

EXHIBIT A



| | | |
|---|---|---|
| **I.** | **INSURING AGREEEMENT** | **1** |
| | **A.1.Professional Services Liability** | **1** |
| | **A.2.Subpoena Assistance Sublimit** | **1** |
| | **B.  Disciplinary Proceedings** | **1** |
| | **C.  Loss of Earnings** | **1** |
| | **D.  Crisis Event Coverage** | **1** |
| **II.** | **EXTENDED REPORTING PERIODS** | **1** |
| | **A.  Automatic Extended Reporting Period** | **1** |
| | **B.  Optional Extended Reporting Period** | **2** |
| | **C.  Death or Disability Extended Reporting Period** | **2** |
| | **D.  Non-Practicing Extended Reporting Period** | **2** |
| **III.** | **DEFINITIONS** | **2** |
| **IV.** | **EXCLUSIONS** | **7** |
| | **A.  Prior Notice** | **7** |
| | **B.  Retroactive Date** | **7** |
| | **C.  Conduct** | **7** |
| | **D.  ERISA** | **8** |
| | **E.  Insured vs. Insured** | **8** |
| | **F.  Beneficiary or Distributee of Trust or Estate** | **8** |
| | **G.  Contract** | **8** |
| | **H.  Bodily Injury or Property Damage** | **8** |
| | **I.  Title Insurance** | **8** |
| | **J.  Employment Practices** | **8** |
| | **K.  Outside Entities** | **8** |
| | **L.  Public Official** | **9** |
| | **M.  Management Capacity** | **9** |
| | **N.  Common Office Space** | **9** |
| | **O.  False Pretenses** | **9** |
| **V.** | **SPOUSES, DOMESTIC PARTNERS ESTATES AND LEGAL REPRESENTATIVES** | **9** |
| **VI.** | **INNOCENT INSUREDS** | **9** |
| **VII.** | **DEFENSE AND SETTLEMENT OF CLAIMS** | **10** |
| **VIII.** | **LIMIT OF LIABILITY** | **10** |
| **IX.** | **DEDUCTIBLE** | **11** |
| **X.** | **REPORTING** | **11** |
| **XI.** | **ALLOCATION** | **12** |
| **XII.** | **OTHER INSURANCE AND INDEMNITY** | **12** |
| **XIII.** | **RELATED CLAIMS** | **12** |
| **XIV.** | **LEGAL PROCEEDINGS** | **12** |

EXHIBIT A



**Lawyers Advantage**
**Professional Liability Insurance Policy Index**

| | | |
|---|---|---|
| **XV.** | **MATERIAL CHANGE** | **13** |
| | A. **Merger or Acquisition of Named Insured** | **13** |
| | B. **Cessation of Insured Entities** | **13** |
| | C. **Additional Entities or Insured Individuals** | **13** |
| | D. **(Paragraph concerning loss, suspension, revocation or surrender of an insured individuals license to practice law.)** | **13** |
| **XVI.** | **SUBROGATION** | **14** |
| **XVII.** | **TERRITORY** | **14** |
| **XVIII.** | **TERMINATION OF POLICY** | **14** |
| **XIX.** | **BANKRUPTCY** | **14** |
| **XX.** | **VALUATION AND FOREIGN CURRENCY** | **14** |
| **XXI.** | **ROLE OF NAMED INSURED** | **14** |
| **XXII.** | **TITLES AND HEADINGS** | **15** |
| **XXIII.** | **CONFORMANCE TO LAW AND TRADE SANCTIONS** | **15** |
| **XXIV.** | **REPRESENTATIONS AND SEVERABILITY** | **15** |

EXHIBIT A

**The Hanover Insurance Group™**

**Lawyers Advantage**

**Professional Liability Insurance**

***THIS IS A CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY.***

In consideration of the premium paid, in reliance upon the statements in the **Application** and subject to the Declarations, limitations, conditions, definitions and other provisions of this Policy, including endorsements hereto, the **Insurer** and the **Insureds** agree as follows:

## I. INSURING AGREEMENTS

### A.1. Professional Services Liability

The **Insurer** will pay on behalf of the **Insured**, **Loss** which the **Insured** is legally obligated to pay due to a **Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, arising from a **Wrongful Act** in the rendering or failure to render **Professional Services**, provided that:

1. The **Wrongful Act** must have first occurred on or after the applicable Retroactive Date(s);

2. The **Insured** had no knowledge of the **Claim** or facts which could have reasonably caused such **Insured** to foresee the **Claim**, prior to the effective date of this Policy; and

3. The **Claim** or **Potential Claim** is reported to the **Insurer** pursuant to Section X. Reporting.

### A.2. Subpoena Assistance Sublimit

The **Insurer** will reimburse the **Insured** for **Subpoena Response Expenses** arising out of a **Subpoena** first received by an **Insured** during the **Policy Period**.

### B. Disciplinary Proceedings

The **Insurer** will pay on behalf of the **Insured Disciplinary Proceeding Expenses** arising out of **Disciplinary Proceedings** commenced against an **Insured Individual** during the **Policy Period**.

### C. Loss of Earnings

The **Insurer** will reimburse the **Insured** for loss of earnings due to such **Insured Individual's** attendance, at the **Insurer's** written request, at a trial, hearing, mediation, arbitration or other alternative dispute resolution proceeding.

### D. Crisis Event Expenses

The **Insurer** will reimburse the **Insured** for **Crisis Event Expenses** arising out of a **Crisis Event** which first occurs during the **Policy Period**.

## II. EXTENDED REPORTING PERIODS

The following Extended Reporting Periods apply only to Insuring Agreement I.A.1. Professional Services Liability:

### A. Automatic Extended Reporting Period

If the **Insurer** or the **Named Insured** terminates or does not renew this Policy then the **Named Insured** shall have the right to a sixty (60) day Automatic Extended Reporting Period beginning on the effective date of termination or non-renewal of this Policy.  There is no additional premium for the Automatic Extended Reporting Period.  The Automatic Extended Reporting Period applies to **Claims** made during the **Policy Period** and reported to the **Insurer** during the Automatic Extended Reporting Period but only for **Wrongful Acts** committed prior to the effective date this Policy is terminated or non-renewed, and subject to all to other terms and conditions of this Policy.

EXHIBIT A

If the Optional Extended Reporting Period outlined below is purchased by the **Named Insured** then the Automatic Extended Reporting Period shall not apply.

B.   Optional Extended Reporting Period

If the **Insurer** or the **Named Insured** terminates or does not renew this Policy, other than termination by the **Insurer** for nonpayment of premium, then the **Named Insured** shall have the right to purchase an Extended Reporting Period for the period set forth in Item 5. of the Declarations beginning on the effective date of the termination or non-renewal of this Policy. The **Named Insured** must provide a written request for the Extended Reporting Period including payment of the additional premium, as set forth in Item 5. of the Declarations, within sixty (60) days following the effective date of the termination or non-renewal of this Policy. Additional premium paid shall be deemed fully earned as of the first day of the Extended Reporting Period and the Extended Reporting Period may not be cancelled.

C.   Death or Disability Extended Reporting Period

If an **Insured Individual** dies or becomes totally and permanently disabled, and does not have other available insurance, the **Insurer** will issue an endorsement for an Extended Reporting Period for such **Insured Individual** of unlimited duration for no additional premium, provided:

1.   Death was not caused by a self-inflicted injury or misuse or abuse of any substance;

2.   Total and permanent disability is established after the effective date of the Policy and must be a result of accidental bodily injury, physical illness or disease, and not arise out of any self-inflicted injury or attempted suicide, or the abuse of intoxicants or controlled substances.  The inability to practice law must be certified in writing by a physician acceptable to the **Insurer**.

In the event of death, such **Insured Individual's** estate, heirs, executors or administrators must, within sixty (60) days of the expiration of the **Policy Period**, provide the **Insurer** with written proof of the date of death.

In the event of total and permanent disability such **Insured Individual** or the **Insured Individual's** legal guardian must, within sixty (60) days of the expiration of the **Policy Period**, provide the **Insurer** with written proof that such **Insured Individual** is totally and permanently disabling the date the disability commenced, certified by the **Insured Individual's** physician.  The **Insurer** shall have the right to request, and the **Insured Individual** must agree, that the **Insured Individual** submit to medical examinations by any physician designated by the **Insurer** at the **Insurer's** expense.

D.   Non-Practicing Extended Reporting Period

If an **Insured Individual** permanently retires or otherwise voluntarily ceases the practice of law the **Insurer** will issue an endorsement for an Extended Reporting Period for such **Insured Individual** of unlimited duration for no additional premium provided:

1.   The **Insured Individual** has been continuously insured with the **Insurer** for the immediately preceding three (3) years; and

2.   Has reached the age of 55.

If an **Insured Individual** leaves the practice of law as a result of loss, suspension, revocation or surrender of the **Insured Individual's** license because of threatened, pending or actual disciplinary action the Extended Reporting Periods outlined above are not available.

III.   **DEFINITIONS**

**Application** means:

A.   Any portion of an application given to the **Insurer** for this Policy including any attachments, written information and materials provided to the **Insurer** by or on behalf of an **Insured** for the purposes of the **Insurer's** underwriting of this Policy; and

B. Any warranty provided to the **Insurer** within the past three years in connection with any coverage part or Policy of which this Policy is a renewal or replacement.

**Breach Notice Law** means any federal, state, local or foreign privacy legislation, regulation and their functional equivalent that requires an entity to provide notice to affected natural persons of any actual or potential unauthorized access to their **Confidential Records**.

**Claim** means any:

A. Oral or written demand received by an **Insured** for monetary or non-monetary relief including injunctive relief;

B. Civil proceeding commenced by the service of a complaint or similar pleading;

C. Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document;

D. Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document; or

E. Written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in A. through D. above;

Against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

**Computer** means a device or group of hardware devices on which software, applications, script, code and computer programs containing **Data** can be operated and viewed.

**Confidential Record** means:

A. A natural person's first name or first initial and last name in combination with:

1. Non-public personally identifiable information, as defined in applicable federal, state, local or foreign legislation or regulations including, social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

2. Financial account number (including a bank account number, retirement account number or healthcare spending account number);

3. Credit, debit or payment card numbers;

4. Information related to employment by an **Insured**;

5. Individually identifiable information considered nonpublic personal information pursuant to Title V of the Gramm-Leach Bliley Act of 1999, as amended; or

6. Individually identifiable information considered protected health information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended;

B. Trade secrets, data, designs, interpretations, forecasts, formulas, methods, practices, processes, reports or other information not included in 1. through 6. above;

which is owned by an **Insured** or for which an **Insured** is legally liable and is intended by an **Insured** to be accessible only by natural persons or entities it has specifically authorized to have such access.

**Crisis Event** means:

A. A **Wrongful Act**;

B. A potential dissolution of the **Named Insured**;

C. Death, serious illness or departure of a principal, partner, owner, director, executive officer, risk manager or in-house general counsel of the **Named Insured**;

D. Incident of workplace violence; or



Lawyers Advantage

**Professional Liability Insurance**

E.   Another event as agreed at the sole discretion of the **Insurer**;

that the **Named Insured** reasonably believes will have a material adverse effect upon the reputation of the **Named Insured**.

**Crisis Event Expenses** means reasonable fees, costs and expenses for consulting services incurred by the **Insured** provided by a public relations firm in response to a **Crisis Event**.

**Cyber Attack** means the transmission of fraudulent or unauthorized **Data** that is intended to and successfully modifies, alters, damages, destroys, deletes, records, transmits, or consumes information within a **System** without authorization, including **Data** that is self-replicating or self-propagating, and which causes the disruption of the normal operation of a **System**.

**Data** means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in a **Computer**.

**Defense Expenses** means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by the **Insurer** or the **Insured** (other than regular or overtime wages, salaries, fees or benefits of **Insured Individuals**) in the investigation, defense, settlement and appeal of a **Claim**, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds regarding such **Claim**.

**Disciplinary Proceeding** means any formal administrative or regulatory proceeding by a regulatory or disciplinary official or agency to investigate or prosecute charges alleging professional misconduct or ethical violations in the performance of an **Insured's Professional Services**.

**Disciplinary Proceeding Expenses** means all expenses the **Insurer** or, with the **Insurer's** prior written consent, the **Insured** incur in investigation, defense or appeal of any **Disciplinary Proceeding**.

**Financially Impaired** means the status of an **Insured** resulting from:

A.   The appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an **Insured**; or

B.   Such **Insured** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Independent Contractor** means any natural person who performs **Professional Services** under contract with, and at the sole direction and control of, an **Insured**, provided that such **Professional Services** inure to the benefit of the **Named Insured**.

**Insured** means an **Insured Entity** and any **Insured Individual**.

**Insured Entity** means the **Named Insured** and any **Predecessor Firm**.  **Insured Entity** does not include any title agency, title insurance company or any other entity on whose behalf an **Insured Individual** acts as a title agent or designated issuing attorney.

**Insured Individual** means any past, present or future owner, partner, shareholder, employee, **Independent Contractor**, or Of Counsel attorney (including part-time, seasonal, leased or temporary employees), intern or volunteer of an **Insured Entity** while acting solely within his or her capacity and scope of duties on behalf of the **Insured Entity**, **Named Insured**, **Predecessor Firm** or **Non-Profit Entity**.

**Insurer** means the entity issuing this Policy as designated on the Policy Declarations.

**Loss** means **Defense Expenses** and the amount the **Insured** is legally obligated to pay as a result of a **Claim** including:

A.   Monetary judgments, awards or settlements, pre-judgment interest and post-judgment interest, back and front pay, compensatory damages;

B. Punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the law of the jurisdiction most favorable to the insurability of such damages where such jurisdiction has a substantial relationship to the **Insured**, the **Insurer**, or to the **Claim** giving rise to such damages;

However, **Loss** does not include:

1. Any amount which an **Insured** is obligated to pay as a result of a **Disciplinary Proceeding**;

2. Any amount which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress for non-monetary damages including injunctive relief;

3. Any amount deemed uninsurable by law; or

4. Fines, penalties, sanctions, taxes or fees.

**Media** means electronic applications, software, scripts and programs on which **Data** is stored so that it can be collected read, retrieved or processed by a **Computer**.  **Media** does not mean paper, or other tangible property, money, debt, equity, instruments, accounts, bonds, bills, records, abstracts, deeds or manuscripts.

**Named Insured** means the person or entity set forth in Item 1. of the Declarations.

**Non-Profit Entity** means any entity described in section 501(c)3, 501(c)4, 501(c)7, 501(c)10, of the Internal Revenue Code of 1986, as amended.

**Non-Profit Services** means service by an **Insured Individual** in a **Non-Profit Entity** as any director, officer, trustee, regent, governor, manager or member of the Board of Managers including any equivalent executive position of any of the foregoing but solely during the time that such service is with the knowledge and express consent of an **Insured Entity**.

**Personal Injury Offense** means:

A. Defamation of character, libel, slander, or publication of material in violation of an individual's right of privacy;

B. Wrongful entry or eviction or other invasion of the right of privacy; or

C. False arrest, wrongful detention or imprisonment, malicious prosecution, malicious use or abuse of process.

**Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of termination of this Policy.

**Potential Claim** means any **Wrongful Act**, facts or other circumstances which may subsequently give rise to a **Claim**.

**Predecessor Firm** means any law firm or legal entity that, prior to the Inception Date shown in Item 2. of the Declarations:

A. Is dissolved or inactive and is no longer rendering **Professional Services**; and

B. Some or all of such firm's principals, owners, officers, or partners have joined the **Named Insured** and more than fifty percent (50%) of such firm's assets have been assigned or transferred to the **Named Insured**.

**Privacy Breach** means:

A. The **Insured Entity's** failure to protect a **Confidential Record** including a **Cyber Attack** on the **Insured's Entity's System** or the actions of a **Rogue Employee** which directly results in the unauthorized disclosure of one or more **Confidential Records**;

B. The theft or negligent loss of hardware, **Media**, **System Output**, **Data** or other documents owned or controlled by, or on behalf of, an **Insured Entity** on which **Confidential Records** are stored or recorded;

C. The **Insured's** negligent failure to disclose an event referenced in A. or B. above in violation of any **Breach Notice Law**; or

The **Hanover** Insurance Group™

Lawyers Advantage

**P r o f e s s i o n a l   L i a b i l i t y   I n s u r a n c e**

D.   The **Insured's** negligent violation of any applicable federal, state, foreign or local privacy legislation or regulation in connection with any **Claim**.

**Professional Services** means:

A.   Services as a lawyer, mediator, arbitrator, notary public, administrator, conservator, receiver, executor,

guardian, trustee, or in any similar fiduciary capacity, but only if the services rendered are those ordinarily performed by a lawyer;

B.   Services as a law clerk, paralegal, legal secretary or other legal support staff;

C.   Services (including title opinions or title certifications) performed for others for a fee as a title insurance agent, title abstractor, title searcher, escrow agent, or closing agent;

D.   Services as a speaker, author of legal treatises or lobbyist;

E.   Activities as a member of a formal accreditation, ethics, peer review, licensing board, standards review, bar association or similar professional board or committee; and

Pro-bono services in any of the above capacities which are customarily performed for others with the knowledge and consent of the **Named Insured**.

**Professional Services** does not mean

A.   Services provided as a public official or an employee or representative of a governmental body, subdivision or agency unless such status is due only to the legal services rendered under contract.

B.   Services rendered as a notary in which an **Insured** provides notarization without the signor being present;

C.   Services rendered in relation to or as the promoter, seller or solicitor of securities, real estate or  other investments; or

D.   Any activity in the **Insured's** capacity as a Certified Public Accountant, Insurance Broker or Agent or Real Estate Broker or Agent.

**Publishing Offense** means:

A.   Oral, written, or electronic publication of material that slanders or libels a person or entity or disparages a person's or entity's goods, products, or services, provided that the **Claim** is made by a person or entity that claims to have been slandered or libeled, or whose goods, products, or services have allegedly been disparaged.

B.   Oral, written, or electronic publication of material that appropriates a person's likeness, unreasonably places a person in false light, or gives unreasonable publicity to a person's private life.

**Related Claims** means all **Claims** based upon, arising from or in any way related to the same facts, circumstances, situations, transactions or events or the same series of facts, circumstances, situations, transactions or events.

**Related Wrongful Acts** means **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

**Rogue Employee** means a permanent employee of an **Insured Entity** who has gained unauthorized access or has exceeded authorized access to a **System** or **Confidential Records** owned or controlled by the an **Insured Entity** or an entity that is authorized by an **Insured** to hold, process or store **Confidential Records** for the exclusive benefit of the **Insured Entity**.

**Security Breach** means:

A.   The failure or violation of the security of the **Insured Entity's System** including the impairment or denial of access to the **Insured Entity's System**, a **Cyber Attack** or unauthorized acts or omissions by a **Rogue Employee** which damages or harms the **Insured Entity's System** or the **System** of a third party with whom the **Insured Entity** provides services for a fee;

B. The theft or loss of hardware or **Media** controlled by, or on behalf of, an **Insured Entity** on which **Data** is stored; or

C. The failure to disclose an event in A. or B. above which violates any **Breach Notice Law**.

**Subpoena** means a subpoena received by an **Insured** for documents or testimony arising out of the **Insured's** rendering of **Professional Services** provided that:

A. The subpoena arises out of a lawsuit to which an **Insured** is not a party; and

B. The **Insured** has not been engaged to provide advice or testimony in connection with the lawsuit or has provided such advice or testimony in the past.

**Subpoena Response Expenses** means attorney legal fees and costs incurred by an attorney retained by the **Insurer** in response to a **Subpoena**. Such payments are included in the Limit of Liability and are subject to the Deductible. Any notice given to the **Insurer** of such **Supoena** will be deemed notification of a **Potential Claim**.

**System** means a **Computer**, **Media** and all input, output, processing storage and communication devices controlled, supervised or accessed by the operation systems that are proprietary to, or licensed to, the owner of the **Computer**.

**System Output** means a tangible substance on which one or more **Confidential Records** are printed from a **System**.

**Wrongful Act** means any actual or alleged negligent act, error, omission, misstatement, misleading statement, breach of duty, **Publishing Offense** or **Personal Injury Offense** committed or attempted, or allegedly committed or attempted, or a **Privacy Breach** or **Security Breach** allowed, by an **Insured** in the rendering of, or failure to render **Professional Services** or **Non-Profit Services**.  All **Related Wrongful Acts** shall be considered a single **Wrongful Act** and all **Related Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period**.

## IV.   EXCLUSIONS

This insurance does not apply to **Loss** for any **Claim**:

A.  Prior Notice

Based upon, arising out of or in any way related to any **Claim**, **Wrongful Act**, investigation, proceeding, act, event, transaction, decision, fact, circumstance or situation which has been the subject of any notice given to any other **Insurer**, under any similar policy of which this Policy is a direct or indirect renewal or replacement.

B.  Retroactive Date

Based upon, arising out of or in any way related to any act which occurred or litigation, administrative or arbitration proceeding, written demand pending against, or any order, decree or judgment entered prior to the Retroactive Date set forth in Item 4. of the Declarations.

C.  Conduct

Based upon, arising out of or in any way related to:

1.  Any deliberate dishonest or fraudulent act or omission or willful violation of any statute or regulation by an **Insured**; or

2.  An **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled including but not limited to conversion, commingling, defalcation, misappropriation or other intentional misuse or illegal use of funds, money or property;

However this Exclusion shall not apply to **Defense Expenses** unless and until a final or non-appealable judgment or adjudication in any underlying proceeding or action establishes an **Insured** committed such an act or omission, violation of statute or regulation or gained such profit, remuneration or advantage to which the **Insured** was not legally entitled.

No conduct pertaining to any **Insured Individual** shall be imputed to any other **Insured Individual** for the purpose of determining the applicability of this Exclusion.

D.  ERISA

For any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985 and the Health Insurance Portability and Accountability Act of 1996, all as amended, and any similar federal, state, local or common law or statutory law anywhere in the world, and any rules and regulations promulgated thereunder.

E.  Insured vs. Insured

Brought by or on behalf of any **Insured** unless such **Claim** arises from the **Insured's** rendering of **Professional Services**.

F.  Beneficiary Or Distributee of Trust or Estate

Based upon, arising out of or in any way related to a **Claim** made against an **Insured** as a beneficiary or distributee of any trust or estate.

G.  Contract

Based upon, arising out of or in any way related to liability assumed through, or on account of, any oral or written contract or agreement to which an **Insured** is a party, however this Exclusion shall not apply to liability that would have attached in the absence of such contract or agreement.

H.  Bodily Injury or Property Damage

For the physical injury to or destruction of any tangible property, including loss of use of that property and loss of use of property that is not physically damaged; or for bodily injury, mental anguish (except mental anguish and emotional distress arising from **Personal Injury Offense**), humiliation, emotional distress, disability, sickness, disease, death, assault or battery sustained by any individual; however this Exclusion shall not apply to any **Claim** directly arising out of **Professional Services** performed as a guardian, conservator or committee of any person or property.

I.  Title Insurance

Based upon, arising out of or in any way related to:

1.  Any defects in title of which the **Insured** had knowledge at the date of issuance of such title insurance but failed to disclose to the title insurance company;

2.  Any breach of underwriting authority in the **Insured's** capacity as a Title Insurance Agent.

J.  Employment Practices

Based upon, arising out of or in any way related to any:

1.  Employment-related **Wrongful Act**;

2.  Discrimination against or sexual harassment of any third party;

3.  Federal, state, local or foreign wage and hour laws, including, without limitation, the Fair Labor Standards Act.

K.  Outside Entities

Based upon, arising out of or in any way related to any entity which is not an **Insured Entity** and:

**The Hanover**
Insurance Group™

# Lawyers Advantage
## Professional Liability Insurance

1. Is a publicly traded company in which an **Insured** holds an interest of more than five percent (5%);

2. Is a privately owned entity in which an **Insured** holds an interest of fifteen percent (15%) as a partner, member, principal or stockholder or creditor;

3. Employs an **Insured Individual**;

4. Is directly or indirectly operated, controlled or managed by an **Insured**.

L.  Public Official

Based upon, arising out of or in any way related to any **Insured's** capacity as a public official, or employee of a government body, subdivision or agency, provided that this Exclusion will not apply to **Professional Services** rendered for such government body, subdivision or agency.

M.  Management Capacity

Based upon, arising out of or in any way related to any **Insured Individual's** capacity as a director or officer of any entity other than the **Named Insured**, provided however this Exclusion shall not apply to the **Insured Individual's** capacity as a director or officer of a **Non-Profit Entity**.

N.  Common Office Space

For a **Wrongful Act** of any person or entity with whom the **Insured** shares a common office space at the **Insured's** premises and who is not an **Insured** under this Policy; or

Brought against and **Insured** if such **Claim** arises solely out of a **Wrongful Act** of any other person or lawyer who is not an **Insured** including but not limited to claims based upon theories of partnership by estoppel, apparent partnership, apparent agency, ostensible agency, vicarious liability or any similar theory.

O.  False Pretenses

Based upon, arising out of or in any way related to the transfer, payment or delivery of funds, money or property caused or induced by trick, artifice, or the fraudulent misrepresentation of a material fact (including but not limited to social engineering, pretexting, phishing, spear phishing or any other confidence trick).

---

## V.   SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES

Coverage shall extend to:

A.  A lawful spouse or domestic partner, as defined under any applicable federal, state or local law, of an **Insured Individual** solely by reason of such person's status as spouse or domestic partner or such person's ownership interest in property which the claimant seeks as recovery from an **Insured Individual**;

B.  The estate, heirs, legal representatives or assigns of an **Insured Individual** if such **Insured Individual** is deceased, legally incompetent, insolvent or bankrupt.

Coverage shall not apply to **Loss** for **Claims** for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by an **Insured Individual's** spouse, domestic partner, heir, estate, legal representative or assigns.

---

## VI.   INNOCENT INSUREDS

If coverage under this Policy would be excluded, suspended or lost because any **Insured** concealed a **Claim** from the **Insurer** coverage shall apply to any other **Insured** who did not participate in, acquiesce in or fail to promptly notify the **Insurer** of such concealment, provided that the **Insured** complied with all other terms, conditions and

provisions of this Policy. The **Insurer** has the right to recover against any **Insured** responsible for dishonest, criminal, malicious or fraudulent acts, errors, omissions, discrimination, concealment or any other illegal act, whether or not intentional, for **Loss** paid pursuant to this section.

**VII.   DEFENSE AND SETTLEMENT OF CLAIMS**

A.   The **Insurer** shall have the exclusive right and duty to defend any **Claim** covered by this Policy even if any allegation of such **Claim** is groundless, false or fraudulent.  However, if an **Insured** is entitled under applicable law to select defense counsel, then such defense counsel shall comply with the **Insurer's** customary rates and litigation guidelines regarding billing, staffing and reporting.  The **Insurer** has no duty to defend any **Claim** or pay **Defense Expenses** for **Claims** to which this insurance does not apply.

B.   The right and duty to defend a **Claim** covered under this Policy shall cease when the applicable Aggregate Limit of Liability for such Insuring Agreement in Item 3. of the Policy Declarations has been exhausted by the payment of **Loss** and the applicable premium shall be deemed fully earned.

C.   The **Insureds** shall provide all information in connection with any **Claim** and cooperate with the **Insurer** in the investigation, defense and settlement of any **Claim**.

D.   No **Insured** shall settle any claim, admit any liability, waive any rights or, except at the **Insured's** own cost, voluntarily make any payment, assume any obligation, or incur any expense related to a **Claim** without the **Insurer's** prior written consent.

E.   The **Insurer** may make any investigation it deems necessary and settle any **Claim** subject to the **Named Insured's** written consent to settle which shall not be unreasonably withheld. If any **Insured** refuses to consent to the settlement of any **Claim** which the **Insurer** recommends and which is acceptable to the claimant, subject to the applicable Limit of Liability or Deductible, the **Insurer's** liability for all **Loss** from such **Claim** shall not exceed:

1.   The amount the **Insurer** would have contributed to the settlement including **Defense Expenses** incurred up to the date of such refusal; and

2.   Eighty percent (80%) of such **Loss** in excess of the amount for which the **Claim** would have been settled.

F.   The **Insurer** shall not seek repayment from an **Insured Individual** of any **Defense Expenses** paid by the **Insurer** that are deemed uninsured pursuant to Exclusion C. Conduct, unless the applicable determination standard set forth in such Exclusion has been met.

G.   If the **Insurer** is prevented by law or otherwise unable to defend or investigate a **Wrongful Act** that occurred outside the United States, the **Insured** under our supervision may arrange for the investigation, appointment of counsel and defense of such **Claim**.  Subject to the applicable Limit of Liability and Deductible, the **Insurer** will reimburse the **Insured** for any reasonable and necessary **Defense Expenses** for such **Claim**.

**VIII.   LIMIT OF LIABILITY**

Regardless of the number of **Insureds**, **Claims**, or claimants the **Insurer's** liability under this Policy is limited as follows:

A.   The applicable Limit of Liability for each **Claim** shown in Item 3.A.1. of the Declarations is the **Insurer's** maximum liability for all **Loss** arising from a single **Claim** or **Related Claims**.  The applicable Maximum Aggregate Limit of Liability shown in the Declarations is the **Insurer's** maximum liability for all **Loss** arising from all **Claims** or **Related Claims** during the **Policy Period**.

B.  The applicable Limit of Liability for each **Subpoena** in Item 3.A.2. of the Declarations is the **Insurer's** maximum liability for all **Subpoena Response Expenses** arising from a single **Subpoena**.  The applicable Maximum Aggregate Limit of Liability shown in the Declarations is the **Insurer's** maximum liability for all **Subpoena Response Expenses** arising from all **Subpoena's** during the **Policy Period**.  **Subpoena Response Expenses** are part of and not in addition to the **Professional Services** Limits of Liability.

C.  The applicable Limit of Liability for each **Disciplinary Proceeding** shown in Item 3.B. of the Declarations is the **Insurer's** maximum liability for all **Disciplinary Proceedings Expenses** arising from a single **Disciplinary Proceeding**. The applicable Maximum Aggregate Limit of Liability shown in the Declarations is the **Insurer's** maximum liability for all **Disciplinary Proceeding Expenses** arising from all **Disciplinary Proceedings** during the **Policy Period**.

D.  The applicable Limit of Liability for loss of earnings for each day shown in Item 3.C. of the Declarations is the **Insurer's** maximum liability for all loss of earnings each day arising from a single appearance.  The applicable each **Insured** Limit of Liability for loss of earnings for each **Insured** shown in the Declarations is the **Insurer's** maximum liability for all loss of earnings for each **Insured** arising from a single appearance.  The applicable Maximum aggregate Limit of Liability shown in the Declarations is the **Insurer's** maximum liability for all loss of earnings arising from all appearances during the **Policy Period**.

E.  The applicable Limit of Liability for each **Crisis Event** shown in Item 3.D. of the Declarations is the **Insurer's** maximum liability all **Crisis Event Expenses** arising from a single **Crisis Event**.  The applicable Maximum Aggregate Limit of Liability shown in the Declarations is the **Insurer's** maximum liability for all **Crisis Event Expenses** arising from all **Crisis Events** during the **Policy Period**.

F.  **Disciplinary Proceeding Expenses**, **Crisis Event Expenses** and loss of earnings are in addition to, and not part of, the **Professional Services** Limits of Liability.

IX.   **DEDUCTIBLE**

A.  The **Insurer's** liability under this Policy applies only to that part of covered **Loss**, **Subpoena Response Expenses**, **Disciplinary Proceedings Expenses** or **Crisis Event Expenses** which is in excess of the applicable Deductible for each **Claim**, **Disciplinary Proceeding**, appearance or **Crisis Event** stated in Item 3. of the Declarations. Such Deductible shall be borne by the **Insureds** uninsured and at their own risk.

B.  The most an **Insured** will pay for covered **Loss** for all **Claims** made during the **Policy Period** will not exceed the applicable Deductible amount for all **Claims** stated in Item 3. of the Declarations.  If the **Insurer** is required or elects to pay the applicable Deductible on behalf of the **Insured**, the **Insured** will pay such Deductible immediately when invoiced.

C.  If different parts of a **Claim** are subject to different Deductibles in different Insuring Agreements the applicable Deductibles will be applied separately to each part of such **Claim** but the sum of such Deductibles shall not exceed the largest applicable Deductible.

X.   **REPORTING**

A.  An **Insured** shall provide the **Insurer** with written notice of a **Claim**, **Subpoena**, **Disciplinary Proceeding or Crisis Event** as soon as practicable after the **Insured** becomes aware of a **Claim**, **Subpoena**, **Disciplinary Proceeding** or **Crisis Event** during the **Policy Period** but in no event later than:

1.  Sixty (60) days after the effective date of expiration or termination; or

2.  The expiration date of the Extended Reporting Period, if applicable,

However if the **Insurer** sends written notice to the **Named Insured** stating that this Policy is being terminated for nonpayment of premium, an **Insured** shall give the **Insurer** written notice of such **Claim**, **Subpoena**, **Disciplinary Proceeding** or **Crisis Event** prior to the effective date of such termination.

B.  If during the **Policy Period**, or an applicable Extended Reporting Period, an **Insured** becomes aware of a **Potential Claim** and gives the **Insurer** notice of such **Potential Claim**, then any **Claim** subsequently arising from such **Potential Claim** shall be deemed made against the **Insured** during the **Policy Period** in which the **Potential Claim** was first reported to, and accepted by, the **Insurer** provided that any such subsequent **Claim** is reported to the **Insurer** in accordance with paragraph A. above.

C.  An **Insured** must give the **Insurer** the assistance, information and cooperation as the **Insurer** may require and shall include in any notice of a **Claim**, or circumstances of a **Potential Claim**, a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature and amount of alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insured** first became aware of the **Claim**, circumstances or alleged **Wrongful Act**.

Notice of a **Claim** or a **Potential Claim**, must be provided in writing to the addresses stated in Item 8. of the Policy Declarations.

## XI.   ALLOCATION

If an **Insured** incurs **Loss** covered by this Policy and loss not covered by this Policy on account of any **Claim** because such **Claim** includes both covered and non-covered matters, coverage with respect to such **Claim** shall apply as follows:

A.  100 percent (100%) of **Defense Expenses** on account of the **Claim** will be considered covered **Loss** provided that this shall not apply to any **Insured** for whom coverage is excluded pursuant to Section XXIV. Representations and Severability; and

B.  The **Insurer** shall fairly allocate all remaining loss that an **Insured** incurred on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal exposure of the parties to such matters.

## XII.   OTHER INSURANCE AND INDEMNITY

If other valid and collectible insurance (other than a policy that is issued specifically as excess of this Policy) is available to the **Insured** for **Loss** covered under this Policy or if indemnification from a **Non-Profit Entity** is entitled to an **Insured Individual**, the insurance provided by this Policy shall be excess of such other insurance or indemnification regardless of whether or not such insurance is primary, contributory, excess contingent or whether such indemnification is actually made.

## XIII.   RELATED CLAIMS

All **Related Claims** will be considered as a single **Claim** made in the **Policy Period** or Extended Reporting Period in which the earliest of such **Related Claims** was first made or first deemed to have been made pursuant to this Policy.  All **Related Claims** are subject to the Limits of Liability, Deductible and other terms and conditions applicable to the earliest **Related Claim**.

## XIV.   LEGAL PROCEEDINGS

A.  No individual or entity has a right under this Policy to join the **Insurer** as a party or otherwise bring **Insurer** into a suit asking for damages from an **Insured** or to sue the **Insurer** on this Policy unless all of its terms have been fully complied with.

B.   An individual or entity may sue the **Insurer** to recover an agreed settlement or on a final judgment against an **Insured** but the **Insurer** will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Liability.  An agreed settlement means a settlement and release of liability signed by **Insurer**, the **Insured** and the claimant or the claimant's legal representative.

**XV.   MATERIAL CHANGE**

A.   Merger or Acquisition of Named Insured

If during the **Policy Period**:

1.   The **Named Insured** merges with or is acquired by another individual, entity or group of individuals or entities where the **Named Insured** is not the surviving entity; or

2.   The **Named Insured** becomes **Financially Impaired**;

this Policy shall continue until the termination or expiration of this **Policy Period** but only for **Claims** for a **Wrongful Act** which occurs prior to such event.

The **Named Insured** shall notify **Insurer** of such transaction as soon as practicable but no later than sixty (60) days after the effective date of the transaction or impairment, and provide such additional information as the **Insurer** requires.

B.   Cessation of Insured Entities

If before or during the **Policy Period** an **Insured Entity** ceases to be an **Insured Entity** then coverage for such **Insured Entity** and its **Insured Individuals** shall continue until termination or expiration of this **Policy Period** but only for **Claims** for a **Wrongful Acts** prior to the date such entity ceased to be an **Insured Entity**.

C.   Additional Entities or Insured Individuals

If during the **Policy Period**:

1.   The number of **Insured Individuals** increases more than fifteen percent (15%) from the number of **Insured Individuals** at the inception of the **Policy Period**;

2.   The **Named Insured** forms another entity, acquires a group of individuals, or merges with another entity where the **Named Insured** is the surviving entity;

then coverage for such entity and its **Insured Individuals** shall be provided but only for **Claims** for **Wrongful Acts** on or after the date such entity was formed or acquired.

If, as a result of such formation or acquisition the total revenues of the new entity or acquisition exceeds twenty five percent (25%) of the revenues of the **Named Insured** as of the beginning of the **Policy Period** then coverage for such entity and **Insured Individuals** will end 90 days after the formation of such entity and acquisition of such individuals, or the end of the **Policy Period**, whichever is earlier, unless the **Named Insured** reports such acquisition to the **Insurer** and agrees to any amendments to the terms of this Policy, including but not limited to an additional premium, the **Insurer** may require.

D.   If during the **Policy Period** an **Insured Individual,** as a result of loss, suspension, revocation or surrender of the **Insured Individual's** license to practice law, leaves the practice of law;  then coverage for such **Insured Individual** shall be provided under this Policy for **Claims** reported during the **Policy Period** which arise from **Wrongful Acts** that occur prior to the date of the loss, suspension, revocation or surrender of such **Insured Individual's** license.

**The Hanover**
Insurance Group™

## Lawyers Advantage
### Professional Liability Insurance

---

**XVI.    SUBROGATION**

In the event of any payment under this Policy the **Insurer** shall be subrogated to the extent of such payment to all of the **Insured's** rights of recovery. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit or otherwise pursue subrogation rights in the name of the **Insureds**, and shall do nothing to prejudice or compromise such rights without the **Insurer's** express written consent.

---

**XVII.   TERRITORY**

This Policy applies anywhere in the world provided that the a **Claim**, **Subpoena** or **Disciplinary Proceeding** is made and brought against the **Insured** within the United States, its territories or possessions or Canada.

---

**XVIII.  TERMINATION OF POLICY**

This policy will terminate upon:

A.   Twenty (20) days after  written notice of termination is mailed by the **Insurer** based upon nonpayment of premium, unless such premium is paid within such twenty (20) day period;

B.   Receipt by the **Insurer** of written notice of termination from the **Named Insured**;

C.   Expiration of the **Policy Period**; or

D.   A date agreed upon by the **Insurer** and the **Named Insured**.

---

**XIX.    BANKRUPTCY**

Bankruptcy of an **Insured** shall not relieve the **Insurer** of its obligations under this Policy.

---

**XX.     VALUATION AND FOREIGN CURRENCY**

All premiums, limits, deductibles, and other amounts are expressed and payable in the currency of the United States of America. If a judgment is rendered, a settlement is denominated or another element of loss this Policy is stated in a currency other than the United States of America dollars, payment under this Policy shall be made in United States of America dollar equivalent determined by the rate of exchange published in the _Wall Street Journal_ on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of loss is due, respectively.

---

**XXI.    ROLE OF NAMED INSURED**

By accepting this Policy the **Named Insured** agrees that it is authorized to, and will, act on behalf of all **Insureds** with respect to any rights provided under this Policy and each **Insured** agrees that the **Named Insured** shall act on its behalf with respect to all such matters.

---

EXHIBIT A

**The Hanover** Insurance Group™

**Lawyers Advantage**

**Professional Liability Insurance**

**XXII.   TITLES AND HEADINGS**

The titles and headings in this Policy are solely for convenience and form no part of the terms and conditions of coverage.

**XXIII.   CONFORMANCE TO LAW AND TRADE SANCTIONS**

Coverage under this Policy does not apply to the extent trade, economic sanction, insurance or other laws or regulations prohibit the **Insurer** from providing insurance.  The terms of this Policy which are in conflict with the statutes of the state in which this Policy is issued are amended to conform to those statutes.

**XXIV.   REPRESENTATIONS AND SEVERABILITY**

A.   The declarations and statements in the **Application** for this Policy are representations and the **Insurer** has relied on such representations when issuing this Policy.  Such representations are incorporated into and constitute part of this Policy.

1.   The **Application** shall be construed as a separate application by each **Insured**.

2.   No statement in the **Application**, fact pertaining to, or knowledge possessed by any **Insured Individual** shall be imputed to any other **Insured Individual**.

B.   If the **Application** contains any misrepresentations made with the intent to deceive or contains misrepresentations which materially affect the acceptance of the risk or the hazard assumed by the **Insurer** under this Policy, then no coverage shall be afforded for any **Claim** based upon arising from or in consequence of any such misrepresentation with respect to:

1.   Any **Insured Individual** who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations) or any **Insured Entity** to the extent it indemnifies any such **Insured Individual**; or

2.   Any **Insured Entity** if any past or present President, Chief Executive Officer, Chief Financial Officer, Managing Partner  or Chief Information Officer (or any equivalent position) of the **Insured Entity** knew of such misrepresentation (whether or not such individual knew such **Application** contained such misrepresentations).

EXHIBIT A



POLICYHOLDER NOTICE

## U.S. Treasury Department's
## Office of Foreign Assets Control ("OFAC")
## Advisory Notice To Policyholders

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this notice carefully.**

The Office of Foreign Assets Control ("OFAC") administers and enforces sanctions policy, based on Presidential Declarations of National Emergency.

OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site:  http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated United States sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

Other limitations on the premiums and payments also apply.

EXHIBIT A



POLICYHOLDER NOTICE

# CUSTOMER NOTICE OF PRIVACY POLICY AND PRODUCER COMPENSATION PRACTICES DISCLOSURES—PRIVACY POLICY DISCLOSURE

### *Collection of Information*

We collect personal information so that we may offer quality products and services. This information may include, but is not limited to, name, address, Social Security number, and consumer reports from consumer reporting agencies in connection with your application for insurance or any renewal of insurance. For example, we may access driving records, insurance scores or health information. Our information sources will differ depending on your state and/or the product or service we are providing to you. This information may be collected directly from you and/or from affiliated companies, non-affiliated third parties, consumer reporting agencies, medical providers and third parties such as the Medical Information Bureau.

We, and the third parties we partner with, may track some of the web pages you visit through cookies, pixel tagging or other technologies. We currently do not process or comply with any web browser's "do not track" signals or similar mechanisms that request us to take steps to disable online tracking. For additional information regarding online privacy, please see our online privacy statement, located at [www.hanover.com](http://www.hanover.com).

### *Disclosure of Information*

We may disclose non-public, personal information you provide, as required to conduct our business and as permitted or required by law. We may share information with our insurance company affiliates or with third parties that assist us in processing and servicing your account. We also may share your information with regulatory or law enforcement agencies, reinsurers and others, as permitted or required by law.

Our insurance companies may share information with their affiliates, but will not share information with non-affiliated third parties who would use the information to market products or services to you.

Our standards for disclosure apply to all of our current and former customers.

### *Safeguards to Protect Your Personal Information*

We recognize the need to prevent unauthorized access to the information we collect, including information held in an electronic format on our computer systems. We maintain physical, electronic and procedural safeguards intended to protect the confidentiality and integrity of all non-public, personal information, including but not limited to social security numbers, driver's license numbers and other personally identifiable information.

### *Internal Access to Information*

Access to personal, non-public information is limited to those people who need the information to provide our customers with products or services. These people are expected to protect this information from inappropriate access, disclosure and modification.

### *Consumer Reports*

In some cases, we may obtain a consumer report in connection with an application for insurance. Depending on the type of policy, a consumer report may include information about you or your business, such as:

- character, general reputation, personal characteristics, mode of living;
- credit history, driving record (including records of any operators who will be insured under the policy); and/or
- an appraisal of your dwelling or place of business that may include photos and comments on its general condition.

EXHIBIT A



# POLICYHOLDER NOTICE

### *Access to Information*

Upon written request, we will inform you if we have ordered an investigative consumer report. You have the right to make a written request within a reasonable period for information concerning the nature and scope of the report and to be interviewed as part of its preparation. You may obtain a copy of the report from the reporting agency and, under certain circumstances, you may be entitled to a copy at no cost.

You also may review certain information we have about you or your business in our files. To review information we maintain in our files about you or your business, please write to us, providing your complete name, address and policy number(s), and indicating specifically what you would like to see. If you request actual copies of your file, there may be a nominal charge.

We will tell you to whom we have disclosed the information within the two years prior to your request. If there is not a record indicating that the information was provided to another party, we will tell you to whom such information is normally disclosed.

There is information that we cannot share with you. This may include information collected in order to evaluate a claim under an insurance policy, when the possibility of a lawsuit exists. It may also include medical information that we would have to forward to a licensed medical doctor of your choosing so that it may be properly explained.

### *Correction of Information*

If after reviewing your file you believe information is incorrect, please write to the consumer reporting agency or to us, whichever is applicable, explaining your position. The information in question will be investigated. If appropriate, corrections will be made to your file and the parties to whom the incorrect information was disclosed, if any, will be notified. However, if the investigation substantiates the information in the file, you will be notified of the reasons why the file will not be changed. If you are not satisfied with the evaluation, you have the right to place a statement in the file explaining why you believe the information is incorrect. We also will send a copy of your statement to the parties, if any, to whom we previously disclosed the information and include it in any future disclosures.

### *Our Commitment to Privacy*

In the insurance and financial services business, lasting relationships are built upon mutual respect and trust. With that in mind, we will periodically review and revise our privacy policy and procedures to ensure that we remain compliant with all state and federal requirements. If any provision of our privacy policy is found to be non-compliant, then that provision will be modified to reflect the appropriate state or federal requirement. If any modifications are made, all remaining provisions of this privacy policy will remain in effect. For more detailed information about our customer privacy policy (including any applicable state-specific policies) and our online privacy statement, visit our Web site, located at www.hanover.com.

### *Further Information*

If you have questions about our customer privacy policy (including any applicable state-specific policies) or our online privacy statement, or if you would like to request information we have on file, please write to us at our Privacy Office, N435, The Hanover Insurance Group, Inc., 440 Lincoln Street, Worcester, MA 01653. Please provide your complete name, address and policy number(s). A copy of our Producer Compensation Disclosure is also available upon written request addressed to the attention of the Corporate Secretary, N435, The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

## Producer Compensation Disclosure

Our products are sold through independent agents and brokers, often referred to as "Producers." We may pay Producers a fixed commission for placing and renewing business with our company. We may also pay additional commission and other forms of compensation and incentives to Producers who place and maintain their business with us. Details of our Producer compensation practices may be found at www.hanover.com.



POLICYHOLDER NOTICE

This notice is being provided on behalf of the following Hanover Companies: The Hanover Insurance Group, Inc. - Allmerica Financial Alliance Insurance Company - Allmerica Financial Benefit Insurance Company - Allmerica Plus Insurance Agency, Inc. - Citizens Insurance Company of America - Citizens Insurance Company of Illinois - Citizens Insurance Company of the Midwest - Citizens Insurance Company of Ohio - Citizens Management, Inc. - AIX Ins. Services of California, Inc.- Campania Insurance Agency Co. Inc. - Campmed Casualty & Indemnity Co. Inc. - Chaucer Syndicates Limited- Educators Insurance Agency, Inc.- Hanover Specialty Insurance Brokers, Inc. - The Hanover American Insurance Company - The Hanover Insurance Company - The Hanover New Jersey Insurance Company - The Hanover National Insurance Company - Hanover Lloyd's Insurance Company - Massachusetts Bay Insurance Company - Opus Investment Management, Inc. - Professionals Direct Insurance Services, Inc. -Professional Underwriters Agency, Inc. - Verlan Fire Insurance Company - Nova Casualty Company - AIX Specialty Insurance Company.



POLICYHOLDER NOTICE

# CLAIM REPORTING GUIDELINES

At Hanover Professionals, we are committed to providing timely and efficient claims assistance to our Insureds. Please follow these guidelines to help us help you.

### Notice of a Claim

Report a claim to Hanover Professionals by email, facsimile or online as soon as possible to provide timely notice as required by your Hanover Policy. Contact us at:

> **Phone: 800.628.0250 (ext. 8556281)   Fax: 508.926.4789**

You may also email us directly at lawyerclaim@hanover.com or online at www.hanover.com/hpro/pli.

### Claims Requiring Expedited Handling

Some claims are time sensitive. Please report such claims as soon as you become aware of them, and while allowing sufficient time for the carrier to investigate and meaningfully respond. Do not wait until the eve of the response deadline as it threatens our ability to timely respond. Those items include, but are not limited to:

You have been served with a summons and complaint

✓ You received a demand from a Claimant which expires on a date certain

✓ You received notice of a proceeding requiring an immediate answer or an answer within a limited timeframe

### Correspondence We Need From You

Please provide a written narrative of the circumstances surrounding the claim or potential claim. The narrative should include:

✓ The Named Insured

✓ The Insureds (i.e., the lawyers involved in the professional services issue), your policy number, and effective date of coverage

✓ The client (Claimant's) name, address, and telephone number (also include the name, address, and telephone number of the Claimant's attorney)

✓ The timeframe in which you provided professional services to the Claimant

✓ Whether your relationship with the Claimant is ongoing or has been terminated

✓ A brief summary of the services rendered

✓ The date the error (alleged error) occurred

✓ A brief summary of the alleged (potential) error - please include the date you first became aware of the claim and the potential amount of damages that will be sought

✓ All pertinent letters or documents necessary for us to properly evaluate the claim (if there are numerous documents, please note this and provide those most pertinent)



POLICYHOLDER NOTICE

# INFORMATION REGARDING
# EXTENDED REPORTING PERIOD ENDORSEMENT
# ("TAIL COVERAGE")

The enclosed policy provides coverage for claims reported during the policy period.  Subject to the policy's terms and conditions, your firm and/or each of the individual firm members may purchase an Extended Reporting Period Endorsement, also known as "tail coverage", that will extend the time for reporting claims arising out of professional services rendered while the policy was still in effect although the policy may have been cancelled or non-renewed, or when a firm member leaves the firm or the practice of law.

The premium charged for the endorsement is expressed as a factor of your policy's annual premium.

| Length of "Tail Coverage" Offered | "Tail Coverage" Premium |
|---|---|
| 12 months coverage | 1.00 of last annual premium |
| 24 months coverage | 1.50 of last annual premium |
| 36 months coverage | 1.75 of last annual premium |
| 60 months coverage | 2.00 of last annual premium |
| 84 months coverage | 2.50 of last annual premium |
| Unlimited coverage | 3.00 of last annual premium |

*Extended Reporting Period Endorsements may be subject to state regulatory requirements.*

Please contact your agent or customer service representative for pricing specific to your situation and location.



# Endorsement

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 1 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

## SCHEDULE OF FORMS

To be attached to and form part of the Policy Number listed above.

| | |
|---|---|
| 913-1901NJ 05/18 | Lawyers Advantage Professional Liability New Jersey RPG Declarations |
| 913-1001 Index 02/17 | Lawyers Advantage Professional Liability Policy Index |
| 913-1001 02/17 | Lawyers Advantage Professional Liability Policy |
| 913-1800 PHN 01/16 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| 913-1801 PHN 01/16 | Customer Notice of Privacy Policy and Producer Compensation Practices Disclosures - Privacy Policy Disclosure |
| 913-1817 PHN 01/16 | Claim Reporting Guidelines |
| 913-1818 PHN 01/16 | Information Regarding Extended Reporting Period Endorsement ("Tail Coverage") |
| 913-1011 01/16 | Schedule of Forms |
| 913-1103 01/16 | Pre-Claim Assistance Coverage |
| 913-1305 01/16 | Exclude Person as Insured Individual |
| 913-1648 12/16 | New Jersey State Amendatory Endorsement DWL |
| 913-1902NJ 05/18 | New Jersey USI Affinity Lawyers Liability |

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

EXHIBIT A



Endorsement

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 1 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

# PRE-CLAIM ASSISTANCE COVERAGE

In consideration of the premium charged it is agreed that:

A.  Item 3.A. Insuring Agreements of the Declarations is amended to include:

| Pre-Claim Assistance Sublimit | $2,000,000 each **Claim** not to exceed; | $2,500 each **Claim** |
|---|---|---|
| | $2,000,000   Maximum Aggregate | |

B.  Section I.A. Insuring Agreements is amended to include:

<u>Pre-Claim Assistance</u>

The **Insurer**, at its sole discretion will reimburse the **Insured** for **Pre-Claim Expenses** arising out of a **Potential Claim** first reported to the **Insurer** during the **Policy Period** until the date a **Claim** arising out of such **Potential Claim** is first made against the **Insured**.

C.  Section III. Definitions is amended to include:

**Pre-Claim Expense** means costs or expenses incurred by the **Insurer** at its sole discretion to investigate a **Potential Claim**.

D.  Section VIII. Limit of Liability is amended to include:

**Pre-Claim Expenses** are part of and not in addition to the **Professional Services** Limits of Liability.

E.  Section IX.A. Deductible is deleted and replaced by:

The **Insurer's** liability under this Policy applies only to that part of covered **Loss**, **Subpoena Response Expenses**, **Disciplinary Proceedings Expenses**, **Crisis Event Expenses** or **Pre-Claim Expenses** which is in excess of the applicable Deductible for each **Claim**, **Disciplinary Proceeding**, appearances **Crisis Event** or **Pre-Claim Expense** stated in Item 3. of the Declarations.  Such Deductible shall be borne by the **Insured's** uninsured and at their own risk.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

EXHIBIT A



Endorsement

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 2 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

## EXCLUDE PERSON AS INSURED INDIVIDUAL

In consideration of the premium charged it is agreed that:

Section III. Definitions, the definition of **Insured Individual** does not apply to the individual(s) listed below:

<u>Individual(s)</u>

Patricia Kay

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

EXHIBIT A



Endorsement

---

Coverage: Lawyers Professional Liability

Issued To: Law Office of Drew J Bauman

Issued By: The Hanover Insurance Company

Endorsement Number: 3

Policy Number: LHY-D729578-00

Effective Date: 10/17/2018

---

## NEW JERSEY STATE AMENDATORY ENDORSEMENT
### (Defense Expenses Inside the Limit)

This Policy complies with NJAC 11:13-7.3 minimum Limit of Liability requirement of $1,000,000.
The **Insureds** Limit of Liability is shown in the Declarations.

In consideration of the premium charged it is agreed that:

A.  Section II.B. of Extended Reporting Periods is deleted and replaced by:

B.  <u>Optional Extended Reporting Period</u>

If the **Insurer** or the **Named Insured** terminates or does not renew this Policy, the **Named Insured** shall have the right to purchase an Extended Reporting Period for the period set forth in Item 5. of the Declarations beginning on the effective date of the termination or non-renewal of this Policy.  If termination of the Policy resulted from nonpayment of premium, the **Named Insured** may purchase the Extended Reporting Period only after any earned premium due to the **Insurer** is paid.  The **Named Insured** must provide a written request for the Extended Reporting Period including payment of the additional premium, as set forth in Item 5. of the Declarations, within sixty (60) days following the effective date of the termination or non-renewal of this Policy. Additional premium paid shall be deemed fully earned as of the first day of the Extended Reporting Period and the Extended Reporting Period may not be cancelled.

B.  Section II.D. Non-Practicing Extended Reporting Period, the last paragraph is deleted and replaced by:

If an **Insured Individual** leaves the practice of law as a result of loss, suspension, revocation or surrender of the **Insured Individual's** license because of disciplinary action the Optional Extended Reporting Period and the Non-Practicing Extended Reporting Period outlined above are not available.

C.  Section V. Spouses, Domestic Partners, Estates and Legal Representatives is amended to include:

A party to a civil union is recognized as a spouse for legal purposes under New Jersey law.

D.  Section VIII.A. of Limit of Liability is amended to include:

The amount available to pay **Loss** under this Policy will be reduced by the amount incurred as **Defense Expenses** after the **Insurer** has incurred **Defense Expenses** of at least 50% of the Limit of Liability shown in the Declarations. The reduction in the Limit of Liability for the payment of **Defense Expenses** will not exceed 50% of the Limits of Liability shown in the Declarations.

The amount available to pay **Loss** under this Policy shall not be reduced to an amount less than 50% of the Limit of Liability shown in the Declarations, regardless of the amount of **Defense Expenses**.

E.  Section s IX.A. and IX.B. of Deductible are deleted and replaced by:

A.  The **Insurer's** liability under this Policy applies only to that part of covered **Loss**, other than **Defense Expenses**, **Subpoena Response Expenses**, **Disciplinary Proceedings Expenses** or **Crisis Event Expenses** which is in excess of the applicable Deductible for each **Claim**, **Disciplinary Proceeding**, appearance or **Crisis Event** stated in Item 3. of the Declarations. Such Deductible shall be borne by the **Insureds** uninsured and at their own risk.

---



Endorsement

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 3 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

B.   The most an **Insured** will pay for covered **Loss** for all **Claims** made during the **Policy Period** will not exceed the applicable Deductible amount for all **Claims** stated in Item 3. of the Declarations.  If the **Insurer** is required or elects to pay the applicable Deductible on behalf of the **Insured**, the **Insured** will pay such Deductible within thirty (30) days of invoicing.

F.   Section X.A. of Reporting, the last paragraph is hereby deleted.

G.   Section XVIII. Termination of Policy is deleted and replaced by:

XVIII.   **TERMINATION / RENEWAL OF POLICY**

A.   This Policy will terminate upon:

1.   Ten (10) days after the receipt by the **Named Insured** of a written notice of termination from the **Insurer**, based upon nonpayment of premium unless such premium is paid within such ten (10) day period, or for moral hazard.  Moral hazard is defined as the substantial risk, danger or probability that the character, circumstances or personal habits of the **Insured** may increase the possibility of loss or liability for which the **Insurer** will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other **Insured** that will increase the probability of such a loss or liability may be considered a moral hazard;

2.   Not less than thirty (30) days or more than one hundred twenty (120) days after the receipt by the **Named Insured** of a written notice of termination from the **Insurer** for only one or more of the following reasons:

a.   Material misrepresentation or nondisclosure of a material fact at the time of acceptance of the risk;

b.   Increased hazard or material change to the risk assumed which could not have been reasonably contemplated by the parties at the time of assumption of the risk;

c.   Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

d.   Fraudulent acts against the **Insurer** by the **Named Insured** or its representatives that materially affect the nature of the risk insured;

e.   Lack of cooperation from the **Insured** on loss control matters affecting insurability of the risk;

f.   Loss of or reduction in insurance capacity as defined in the New Jersey cancellation regulations;

g.   Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal thereof;

h.   Loss of or substantial changes in applicable reinsurance which exists as defined in the New Jersey cancellation regulations;

i.   Failure by the **Insured** to comply with any Federal, State or local fire, health, safety, building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within sixty (60) days of written notification of a violation of any such law, regulation or ordinance;

EXHIBIT A



# Endorsement

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 3 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

     j.   Failure by the **Insured** to provide reasonable and necessary underwriting information to the **Insurer** upon written request and with a reasonable opportunity to respond; or

     k.   Agency termination, provided that the **Insurer** has offered to continue coverage or provide replacement coverage at comparable rates and terms in writing to the **Named Insured** and the **Named Insured** has agreed in writing to the cancellation or nonrenewal based on the termination of his or her appointed agent.

   3.   Receipt by the **Insurer** of written notice of termination from the **Named Insured**;

   4.   Expiration of the **Policy Period**; or

   5.   A date agreed upon by the **Insurer** and the **Named Insured**.

B.   This Policy may be non-renewed by the **Insurer** by sending written notice to the **Named Insured** not less than thirty (30) days nor more than one hundred twenty (120) days prior to the expiration of the **Policy Period**.

C.   Notice of termination or nonrenewal will be mailed with a statement of the specific reason for termination or nonrenewal and shall be sent to the **Named Insured** at the last mailing address known to the **Insurer** by:

   1.   Certified mail; or

   2.   First class mail, if the **Insurer** has obtained a date stamped proof of mailing showing the **Named Insured's** name and address.

D.   Notice of the amount of the renewal premium and any change in contract terms shall be given to the **Named Insured** in writing not more than one hundred twenty (120) days nor less than thirty (30) days prior to the due date of the premium and shall clearly state the effect of nonpayment of the premium by the due date.

E.   Pursuant to New Jersey law, this Policy cannot be terminated or non-renewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the **Named Insured**.  The underwriting reasons or guidelines that the **Insurer** uses to terminate or non-renew this Policy are maintained by the **Insurer** in writing and will be furnished to the **Named Insured** or the **Named Insured's** lawful representative upon written request.

   This provision shall not apply to any policy which is not a renewal policy and which has been in effect for less than sixty (60) days at the time notice of termination is mailed or delivered.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Risk Purchasing Group Endorsement

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 4 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

## NEW JERSEY USI AFFINITY LAWYERS LIABILITY

In consideration of the premium charged it is agreed that:

A.  Section I. Insuring Agreements is amended to include:

E.  Breach Event Expenses and Cyber Investigation Expenses

The **Insurer** will pay on behalf of the **Insured**, **Breach Event Expenses** directly resulting from a **Privacy Breach** or **Security Breach**, and **Cyber Investigation Expenses** directly resulting from a **Regulatory Investigation** regarding a **Privacy Breach** or **Security Breach**, in the rendering or failure to render **Professional Services**, first discovered by the **Insured** during the **Policy Period**, provided that:

1.  The **Privacy Breach** or **Security Breach** must have first occurred on or after the applicable Retroactive Date(s);

2.  The **Insured** had no knowledge of the **Privacy Breach** or **Security Breach** or facts which could have reasonably caused such **Insured** to foresee the **Privacy Breach** or **Security Breach**, prior to the effective date of this Policy; and

3.  The **Privacy Breach** or **Security Breach** is reported to the **Insurer** pursuant to Section X. Reporting.

F.  Reputation Protection Expense

The **Insurer** will reimburse the **Insured** up to fifty (50%) percent of **Reputation Event Expenses** the **Insured** incurs responding to a **Reputation Event** in the rendering or failure to render **Professional Services**, provided that:

1.  The **Reputation Event** must have first occurred on or after the applicable Retroactive Date(s);

2.  The **Insured** had no knowledge of the **Reputation Event** or facts which could have reasonably caused such **Insured** to foresee the **Reputation Event**, prior to the effective date of this Policy; and

3.  The **Reputation Event** is reported to the **Insurer** pursuant to Section X. Reporting.

G.  Withheld Client Fee Assistance

If the **Insured** attempts to collect a fee due for **Professional Services** that the **Insured's** client has refused to pay for more than three (3) months from the time payment was due ("Withheld Client Fee") and:

1.  As a result of such collection attempts, the client brings an otherwise covered **Claim** during the **Policy Period** alleging a **Wrongful Act** in the rendering or failure to render **Professional Services** for an amount greater than owed to the **Named Insured**; and

2.  The **Professional Services** were rendered under a fully executed engagement letter with the client, which includes fee arrangements and outlines the scope of representation; and

3.  The **Insured** provides the **Insurer** written confirmation from the client, acceptable to the **Insurer**, that the client will withdraw the **Claim** ("written confirmation");

then the **Insurer** will reimburse one hundred percent (100%) of the Withheld Client Fee.

EXHIBIT A



# Risk Purchasing Group Endorsement

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 4 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

B.  Section II. D. Non-Practicing Extended Reporting Period is amended to include:

For purposes of determining eligibility for the Non-Practicing Extended Reporting Period, full years continuously insured with the USI Affinity Insurance Program shall be considered years with the **Insurer**.

C.  Section III. Definitions is amended to include:

**Breach Event Expenses** means the reasonable and necessary expenses incurred for a stipulated period of time, from the date a **Security Breach** or **Privacy Breach** is first discovered by an **Insured**:

A.  To conduct an investigation and forensic analysis to determine the cause of a covered **Security Breach** or **Privacy Breach**;

B.  To determine and notify the individuals whose **Confidential Records** were accessed or acquired including, but not limited to, the cost of mailing, printing, advertising and other communications;

C.  To establish a call center to be used by individuals whose **Confidential Records** were accessed or acquired;

D.  For credit or identity monitoring or identity theft education assistance including fees, costs or expenses associated with the purchase of an identity fraud insurance policy to benefit individuals whose **Confidential Records** were accessed or acquired;

E.  To retain a public relations crisis management or law firm as consultants to minimize harm directly arising from a covered **Security Breach** or **Privacy Breach**; or

F.  For any other expenses or services pre-approved in writing by the **Insurer** at the **Insurer's** sole and absolute discretion.

**Crisis Management Firm** means a service provider hired by the **Named Insured** and approved in writing by the **Insurer**.  The **Insurer's** consent will not be unreasonably withheld.

**Cyber Investigation Expenses** means all expenses the **Insurer** incurs or authorizes in writing for the investigation, adjustment, defense or appeal of a **Regulatory Investigation**.

**Mediation** means the non-binding intervention of a qualified neutral third party chosen by the **Named Insured**, with agreement by the **Insurer,** and the other party to a **Claim**.

**Regulatory Investigation** means a formal request for information, civil investigative demand or civil proceeding, including requests for information related thereto, brought by, or on behalf of, a state Attorney General, the Federal Trade Commission, the Federal Communications Commission or any other federal, state, local or foreign governmental agency.

**Reputation Event** means a **Wrongful Act(s)** that the **Named Insured** reasonably believes will have material, adverse impact on the **Named Insured's** reputation resulting in a loss of revenues because of diminished customer confidence based on unfavorable information made available by or appearing on:

A.  Social media;

B.  Television or radio broadcasts; or

C.  Newspapers;

provided such written media was in general circulation and such electronic media was available to the public on a fully open network that was neither password protected nor restricted from access by any method.



Risk Purchasing Group Endorsement

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 4 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

**Reputation Event Expenses** means the reasonable fees, costs, and expenses incurred by the **Named Insured** for consulting services performed by a **Crisis Management Firm**, as a result of a **Reputation Event**.

D.   Section IV. Exclusions is amended to include:

<u>Exclusions Applicable to Breach Event Expenses and Cyber Investigation Expenses above:</u>

This insurance does not apply to **Loss** for any **Claim**, or for any **Breach Event Expenses** or **Cyber Investigation Expenses**:

A.   <u>Prior Notice</u>

Based upon, arising out of or in any way related to any **Security Breach**, **Privacy Breach**, investigation, proceeding, act, event, transaction, decision, fact, circumstance or situation which has been the subject of any notice given to any other insurer under any similar policy of which this Policy is a direct or indirect renewal or replacement.

B.   <u>Retroactive Date</u>

Based upon, arising out of or in any way related to any **Security Breach**, **Privacy Breach**, investigation, proceeding, act, event, result, damage, transaction, decision, fact, circumstance or situation which occurred, in whole or in part, prior to the applicable Retroactive Date set forth in Item 4. of the Declarations Page.

C.   <u>Assumed Obligations</u>

Costs or expenses incurred to perform any obligation assumed by, on behalf of, or with the consent of any **Insured**; however, this Exclusion shall not apply to **Breach Event Expenses**.

D.   <u>Return of Payments</u>

Return of fees, charges, commissions or other compensation paid to an **Insured**.

E.   <u>Investigations</u>

Costs, fees or expenses incurred or paid by any **Insured** in establishing the existence of, or amount of loss, however this Exclusion shall not apply to **Breach Event Expenses** for the retention of an information security forensic investigator or forensic accountant.

F.   <u>System Changes</u>

Costs or expenses incurred to replace, upgrade, update, improve, or maintain any **System**.

G.   <u>Non-monetary Relief</u>

Costs of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief.

H.   <u>Taxes, Fines and Penalties</u>

Fines or penalties imposed by law, taxes or liquidated damages.

I.   <u>Potential Income</u>

Potential income, including interest or dividends, not realized by any **Insured**.



**Risk Purchasing Group Endorsement**

---

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 4 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

---

J. Uniform Commercial Code

Loss, costs or expenses any **Insured** agrees to incur or incurs on behalf of another natural person or entity when such **Insured** is not obligated to incur such loss, costs or expenses under the Uniform Commercial Code or any other law, statute, rule or code anywhere in the world, including the rules or codes of any clearing or similar entity, provided that this Exclusion does not apply to Insuring Agreement Breach Event Expenses.

K. Consequential Loss

Loss, costs or expenses based upon, arising from or in consequence of an indirect or consequential loss of any nature.

L. Malfunction or Error

Loss, costs or expenses resulting from mechanical failure, faulty construction, error in design, latent defect, wear or tear, gradual deterioration, electrical disturbance, **Media** failure or breakdown or any malfunction or error in programming, or error or omission in processing.

E. Section VII. Defense and Settlement of Claims, paragraphs. A. and E. are deleted and replaced by:

A. The **Insurer** shall have the exclusive right and duty to defend any **Claim** covered by this Policy even if any allegation of such **Claim** is groundless, false or fraudulent.  However, if an **Insured** is entitled under applicable law to select defense counsel, then such defense counsel shall comply with the **Insurer's** customary rates and litigation guidelines regarding billing, staffing and reporting.  The **Insured** may recommend counsel to the **Insurer** and such acceptance will not be unreasonably withheld, provided such counsel agrees with the **Insurer's** customary rates and litigation guidelines regarding billing, staffing and reporting.  The **Insurer** has no duty to defend any **Claim** or pay **Defense Expenses** for **Claims** to which this insurance does not apply.

E. The **Insurer** may make any investigation it deems necessary and settle any **Claim** subject to the **Named Insured's** written consent to settle which shall not be unreasonably withheld.  The **Insurer's** duty to defend any **Claim** or pay any amount as **Damages**, **Claim Expenses**, **Subpoena Response Expenses**, **Disciplinary Proceedings Expenses**, loss of earning, **Crisis Event Expenses**, Withheld Client Fee and **Reputation Protection Expenses** will cease when the **Insurer's** applicable Limit of Liability has been exhausted.  Upon exhaustion of the applicable Limit of Liability, the **Insurer** will tender control of the defense to the **Named Insured**.  The **Named Insured** agrees to accept this tender of defense.

F. Section VIII. Limit of Liability, paragraph F. is deleted and replaced by:

F. **Disciplinary Proceeding Expenses**, **Crisis Event Expenses**, **Breach Event Expenses**, **Cyber I**nvestigation Expenses, **Reputation Protection Expenses**, Withheld Client Fee and loss of earnings are in addition to, and not part of, the **Professional Services** Limit of Liability.

G. Section VIII. Limit of Liability is amended to include:

Regardless of the number of **Insureds**, **Claims**, or claimants, the **Insurer's** liability under this Policy is limited as follows:

G. The applicable Limit of Liability for each **Breach Event Expense** or **Cyber Investigation** shown in Item 3 E. of the Declarations is the **Insurer's** maximum liability for all **Breach Event Expenses** and **Cyber Investigations** arising from a single **Privacy Breach** or **Security Breach**.  The applicable Maximum Aggregate Limit of Liability shown in the Policy Declarations is the **Insurer's** maximum liability for all



**Risk Purchasing Group Endorsement**

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 4 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

**Breach Event Expenses** and all **Cyber Investigations** arising from all **Privacy Breaches** or **Security Breaches** during the **Policy Period**.

H. The applicable Limit of Liability for each **Reputation Protection Expense** shown in Item 3.F. of the Policy Declarations is the **Insurer's** maximum liability for all **Reputation Event Expenses** arising from a single **Reputation Event**. The applicable Maximum Aggregate Limit of Liability shown in the Declarations is the **Insurer's** maximum liability for all **Reputation Event Expenses** arising from **Reputations Events** during the **Policy Period**.

I. The applicable Limit of Liability for each Withheld Client Fee Assistance shown in Item 3.G. of the Policy Declarations is **Insurer's** maximum liability for all Withheld Client Fees arising from a single **Claim**. The applicable Maximum Aggregate Limit of Liability shown in the Declarations is the **Insurer's** maximum liability for all Withheld Client Assistance arising from all **Claims** during the **Policy Period**.

H. Section IX. Deductible, paragraph A. is deleted and replaced by:

The **Insurer's** liability under this Policy applies only to that part of covered **Loss**, other than **Defense Expenses**, **Subpoena Response Expenses**, **Disciplinary Proceedings Expenses**, **Crisis Event Expenses**, **Breach Event Expenses**, **Cyber Investigation Expenses** or **Reputation Protection Expenses** which is in excess of the applicable Deductible for each **Claim**, **Subpoena**, **Disciplinary Proceeding**, **Crisis Event**, **Privacy Event or Security Breach**, **Regulatory Investigation** or **Reputation Event** stated in Item 3. of the Policy Declarations. Such Deductible shall be borne by the **Insureds** uninsured and at their own risk.

I. Section IX. Deductible is amended to include:

D. <u>Deductible Reduction Benefit</u>

1. <u>Claim-Free</u>

   The **Insured** will be entitled to reduction in the each **Claim** Deductible provided that the following qualifications are met:

   a. The **Insurer** has issued a Policy to the **Named Insured** for a minimum of three (3) consecutive annual **Policy Periods**;

   b. The **Policy** must be account current with no overdue payments outstanding; and

   c. The **Named Insured** has not reported any **Claims** in the last three **Policy Periods**. For purposes of determining eligibility for the Claim-Free benefit full years continuously insured with the USI Affinity Insurance Program shall be considered years with the **Insurer**.

   d. Then the each **Claim** Deductible obligation will be reduced by fifty percent (50%) provided that:

      1) The maximum amount of any such reduction is $10,000.

      2) A Deductible reduction will not be applied:

         a. To any subsequent **Claims** in the **Policy Period**.

         b. If the Policy is cancelled, terminated, non-renewed or subject to an Extended Reporting Period.



Risk Purchasing Group Endorsement

| | |
|---|---|
| Coverage: Lawyers Professional Liability | Endorsement Number: 4 |
| Issued To: Law Office of Drew J Bauman | Policy Number: LHY-D729578-00 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/17/2018 |

2. Mediation

If the **Insurer** asks, and the **Named Insured** agrees, to use **Mediation** to resolve any **Claim** brought against the **Insured**, and if the **Claim** is resolved by **Mediation** within 180 days of the date such **Claim** was reported to the **Insurer** in accordance with Section X. Reporting, the Deductible obligation for that **Claim** will be reduced by fifty percent (50%). The maximum amount of any such reduction is $10,000.

3. Risk Management

Upon written notice of a **Claim** or **Potential Claim**, if the **Named Insured** provides the **Insurer** with the relevant fully executed engagement letter, which includes fee arrangements and outlines the scope of representation, dated prior to such **Claim** or **Potential Claim** and contains at least two of the following provisions:

   a. An enforceable waiver of damages provision in the **Insured's** favor;

   b. An enforceable limitation of liability limiting the **Insured's** liability to the lesser of the **Insured's** fee or $250,000; provided that this benefit shall not apply if the Policy's Per **Claim** Limit of Liability is $500,000 or less; and

   c. A requirement for mandatory Mediation as the first method of dispute resolution.

   The Deductible obligation for that **Claim** will be reduced by fifty percent (50%), subject to a maximum of $25,000 (Per **Claim**).

4. The reductions provided under D. 1, 2 and 3 of this section cannot be combined.  Only one reduction in Deductible obligation may be applied to a single **Claim**.

J. Section X. Reporting, paragraph A. is amended to include:

An **Insured** shall provide the **Insurer** with written notice of a **Reputation Event**, **Privacy Breach** or **Security Breach**, or **Regulatory Investigation** as soon as practicable after the **Insured** becomes aware of the **Reputation Event**, **Privacy Breach** or **Security Breach**, or **Regulatory Investigation**, during the **Policy Period**, but in no event later than the effective date of expiration or termination of the Policy.

K. Section X. Reporting is amended to include:

The **Insured** must give the **Insurer** the assistance, information and cooperation as the **Insurer** may require and shall include:

1. In any notice of a **Security Breach** or **Privacy Breach**, the nature of the alleged **Privacy Breach** or **Security Breach**, the amount or scope of alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insured** first became aware of the **Privacy Breach** or **Security Breach**.

2. In any notice of a **Regulatory Investigation**, the regulatory complaint, the nature of the alleged **Privacy Breach** or **Security Breach**, the names of actual or potential claimants, and the manner in which the **Insured** first became aware of the **Privacy Breach** or **Security Breach**;

3. In any notice of a **Crisis Event**, the nature of the alleged **Wrongful Act** or other event, the nature of the anticipated material, adverse impact on the **Named Insured's** reputation, and the manner in which the **Insured** first became aware of the circumstances or alleged **Wrongful Act**; and

4. In any notice of a **Reputation Event**, the nature of the alleged **Wrongful Act**, the nature of the anticipated material, adverse impact on the **Named Insured's** reputation, and the manner in which the **Insured** first

EXHIBIT A



Risk Purchasing Group Endorsement

Coverage: Lawyers Professional Liability

Issued To: Law Office of Drew J Bauman

Issued By: The Hanover Insurance Company

Endorsement Number: 4

Policy Number: LHY-D729578-00

Effective Date: 10/17/2018

became aware of the circumstances or alleged **Wrongful Act**.

5.  Notice of a **Reputation Event**, **Subpoena**, **Disciplinary Proceeding**, **Crisis Event**, **Privacy Breach** or **Security Breach**, or **Regulatory Investigation**, must be provided in writing to the addresses stated in Item 7. of the Policy Declarations.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.