# EXHIBIT H



Neutral

As of: July 20, 2022 12:20 PM Z

# Helms v. Hanover Ins. Grp. Inc.

United States District Court for the District of Arizona

August 20, 2021, Decided; August 20, 2021, Filed

No. CV-20-01728-PHX-DWL

**Reporter**
2021 U.S. Dist. LEXIS 158183 *; 2021 WL 3709813

Julie-Anne Helms, et al., Plaintiffs, v. Hanover Insurance Group Incorporated, et al., Defendants.

**Prior History:** *Helms v. Hanover Ins. Grp., Inc., 2021 U.S. Dist. LEXIS 79743, 2021 WL 1610202 (D. Ariz., Apr. 26, 2021)*

## Core Terms

insured, email, funds, summary judgment, ambiguous, unencrypted, coverage, trick, nonmoving, material fact, misappropriation, allegations, fiduciary, artifice, title company, fraudulent, quotation, Deposit, damages, argues, marks, insurance policy, punitive damages, policy coverage, alleged facts, confidential, fraudsters, provisions, genuine, induced

## Case Summary

**Overview**
HOLDINGS: [1]-Because purchasers' claims against a realtor and her real estate agency fell within the False Pretenses Exclusion of a Professional Liability Policy, an insurance company had no duty to provide a defense to the realtor and agency with respect to those claims. The insurance company thus did not breach the insurance contract; [2]-The language of the exclusion was not limited to claims arising out of the insured's own tricks, artifices, and fraud because it extended to a payment of funds by anyone, which would encompass claims arising out of the purchasers' payment of funds to fraudsters; [3]-The bad faith claim failed because the insurance company did not act unreasonably in refusing to defend the rialto and agency, and they did not proffer any argument or evidence that the insurance company acted unreasonably in the manner in which it declined to defend the lawsuit.

**Outcome**
Insurance company's motion for summary judgment granted.

## LexisNexis® Headnotes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > Judgments > Summary Judgment > Entitlement as Matter of Law

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Materiality of Facts

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Legal Entitlement

*HN1*[ ] **Entitlement as Matter of Law, Appropriateness**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*. A fact is material only if it might affect the outcome of the case, and a dispute is genuine only if a reasonable trier of fact could resolve the issue in the non-movant's favor. The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor. Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts.

Civil Procedure > ... > Summary Judgment > Supporting

Materials > Affidavits

Civil Procedure > Judgments > Summary Judgment > Burdens of Proof

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Movant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

HN2[ ] **Supporting Materials, Affidavits**

A party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Fed. R. Civ. P. 56(c)*). In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense.

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > Judgments > Summary Judgment > Burdens of Proof

Civil Procedure > Judgments > Summary Judgment > Entitlement as Matter of Law

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

HN3[ ] **Entitlement as Matter of Law, Appropriateness**

If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. There is no issue for trial unless enough evidence favors the non-moving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. At the same time, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. In ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. Thus, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant.

Insurance Law > Liability & Performance Standards > Good Faith & Fair Dealing > Duty to Defend

Insurance Law > ... > Motor Vehicle Insurance > Obligations > Duty to Defend

Insurance Law > ... > Property Insurance > Obligations > Duty to Defend

Insurance Law > ... > Business Insurance > Commercial General Liability Insurance > Duty to Defend

Insurance Law > ... > Business Insurance > Commercial General Liability Insurance > Indemnification

HN4[ ] **Good Faith & Fair Dealing, Duty to Defend**

Under Arizona law, an insurance policy imposes on the insurer the duty to defend against claims potentially covered by the policy and the duty to indemnify the insured for covered claims. A liability insurer's duty to defend, which is separate from and broader than its duty to indemnify, generally arises if the complaint filed against the insured alleges facts that fall within the policy's coverage. If the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume the defense of the action, but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation. The insurance policy language controls the scope and extent of an insurer's duty to defend. If the alleged facts ostensibly bring the case within policy coverage but other facts which are not reflected in the complaint plainly take the case outside the policy coverage, the insurer does not have an absolute duty to defend. The insurer may investigate the matter and refuse to defend based on facts discovered outside the complaint that take the case outside coverage.

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Entire Contract

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Ordinary & Usual Meanings

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Question of Law

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Plain Language

Insurance Law > ... > Policy Interpretation > Ambiguous Terms > Unambiguous Terms

HN5[ ] Policy Interpretation, Entire Contract

The interpretation of an insurance contract is a question of law. An insurance policy is read as a whole, so as to give a reasonable and harmonious effect to all of its provisions. Provisions of insurance policies are to be construed in a manner according to their plain and ordinary meaning. Where the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there. An interpretation of a contract which renders it unreasonable should be avoided.

Evidence > Burdens of Proof > Allocation

Insurance Law > ... > Procedure > Evidence & Trial > Burdens of Proof

Insurance Law > ... > Commercial General Liability Insurance > Exclusions > Burdens of Proof

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Exclusions

Insurance Law > ... > Policy Interpretation > Ambiguous Terms > Construction Against Insurers

HN6[ ] Burdens of Proof, Allocation

If a clause in an insurance contract appears ambiguous, courts interpret it by looking to legislative goals, social policy, and the transaction as a whole. If an ambiguity remains after considering these factors, courts construe it against the insurer. This rule applies with even greater force where the ambiguity appears in an exclusionary clause. In determining whether an ambiguity exists in a policy, the language should be examined from the viewpoint of one not trained in law or in the insurance business. Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion.

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Entire Contract

HN7[ ] Policy Interpretation, Entire Contract

In interpreting an insurance policy courts attempt to harmonize and give effect to all provisions so that none is rendered meaningless. Plaintiffs' construction is thus untenable.

Insurance Law > ... > Policy Interpretation > Ambiguous Terms > Construction Against Insurers

HN8[ ] Ambiguous Terms, Construction Against Insurers

Ambiguous provisions are only construed against the insurer if they are actually ambiguous, which means the language must be susceptible to different constructions. The rules of construction against the drafter in the event of ambiguity apply only where there is ambiguity.

Insurance Law > Liability & Performance Standards > Bad Faith & Extracontractual Liability > Elements of Bad Faith

HN9[ ] Bad Faith & Extracontractual Liability, Elements of Bad Faith

The tort of bad faith has two elements: first, that the insurer acted unreasonably towards its insured and, second, that the insurer acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it.

Civil Procedure > Remedies > Damages > Punitive Damages

Insurance Law > Remedies > Damages > Punitive Damages

HN10[🔽]  **Damages, Punitive Damages**

The right to an award of punitive damages must be grounded upon a cause of action for actual damages. Under Arizona law, a separate cause of action does not exist for punitive damages.

**Counsel:** [*1] For Julie-Anne Helms, an Individual, Helms & Helms PLLC, an Arizona Professional Limited Liability Company, Plaintiffs: Mark Doss Wesbrooks, LEAD ATTORNEY, Westbrooks Law Firm PLLC - Peoria, AZ, Peoria, AZ.

For Hanover Insurance Group Incorporated, Hanover Insurance Company, Defendants: Amy Michelle Samberg, Amy Lynn Stein, LEAD ATTORNEYS, Foran Glennon Palandeck Ponzi & Rudloff PC, Phoenix, AZ.

**Judges:** Dominic W. Lanza, United States District Judge.

**Opinion by:** Dominic W. Lanza

# Opinion

**WO**

**ORDER**

This insurance dispute arises from a bizarre real estate transaction gone wrong. Julie-Anne Helms (a realtor) and Helms & Helms, P.L.L.C. (her real estate agency) (together, "Plaintiffs") were representing a couple interested in purchasing a home in Arizona. When the couple attempted to wire the closing funds (nearly $120,000), they sent it to fraudsters who had used forged emails and payment instructions to impersonate the title company representative. Afterward, the couple sued Plaintiffs in an attempt to recoup the lost money. Plaintiffs, in turn, notified their insurance company, The Hanover Insurance Company ("Hanover"), of the lawsuit and sought a defense, but Hanover declined to provide a defense based on various policy [*2] exclusions. In this action, Plaintiffs challenge Hanover's denial of a defense.

Now pending before the Court is Hanover's[1] motion for summary judgment. For the following reasons, the motion is granted.

---

[1] The Court will use "Hanover" to refer to both Hanover Insurance Group Inc. and the lone remaining co-defendant Hanover Insurance Company. Hanover maintains that Hanover Insurance Group Inc. was erroneously named and sued. (Doc. 23 at 1.)

**BACKGROUND**

I. Factual Background

The facts below are derived from the parties' summary judgment submissions. In March 2018, Hanover issued a Professional Liability Policy ("the Policy") to Conrad Financial Services d/b/a ReMax Preferred Choice, the named insured ("ReMax"). (Doc. 23-1.) Plaintiffs work for ReMax as independent contractors. (Doc. 23-4 at 2-3.)

In May 2018, Joseph and Carla Thuney (the "Thuneys") filed a complaint in this District, *Thuney v. Lawyer's Title of Arizona Inc.*, 18-cv-01513-HRH, against Plaintiffs and others. (Doc. 23-2.) In their complaint, the Thuneys alleged that they hired Plaintiffs, who were working as contractors for ReMax, to assist them in purchasing a home in Arizona. (*Id.* ¶¶ 17, 21.) After Plaintiffs exchanged unencrypted emails with the title company, the Thuneys received an email from someone masquerading as an agent of the title company with wire transfer instructions for the Thuneys' almost $120,000 down payment. (*Id.* ¶¶ 25-39.) The Thuneys, unsuspecting [*3] of any fraud, wired the payment to the impersonators. (*Id.* ¶¶ 36-42.) The Thuneys discovered the fraud soon afterward but, despite their efforts to stop the wire transfer, the funds were released to the fraudsters. (*Id.* ¶¶ 43-56.) As discussed in more detail below, the Thuneys asserted claims against Plaintiffs for breach of confidential or fiduciary duty (*id.* ¶¶ 67-71) and negligence or gross negligence (*id.* ¶¶ 75-76).

On June 12, 2018, ReMax notified Hanover of the lawsuit. (Doc. 23-3.) Hanover opened an investigation into the claim. (Doc. 23-4 at 5-10.) As part of its investigation, Hanover reviewed the Thuneys' complaint and the Policy and had several discussions with ReMax. (*Id.*)

On June 22, 2018, Hanover informed ReMax of its denial of coverage. (Doc. 23-5.) Hanover provided three bases for the denial. (*Id.*) The first was an exclusion in the Policy barring coverage for claims "arising out of or resulting . . . from any . . . commingling, misappropriation or improper use of funds or monies," which Hanover deemed applicable because the claims against Plaintiffs "involve[d] funds which were embezzled and/or misappropriated." (*Id.* at 5, internal quotation marks omitted.) Second was [*4] a different exclusion barring coverage for "any conversion or improper use of funds," which Hanover deemed applicable because the claims against Plaintiffs arose out of "misappropriation or conversion of funds." (*Id.*) Third was an exclusion barring coverage for claims related to, or arising out of, a "transfer, payment, or delivery of funds . . . which was caused or induced by trick, artifice, or the fraudulent representation of a material fact," which Hanover deemed applicable because the

claims against Plaintiffs were premised on the allegation that "funds were transferred due to trick . . . through a social engineering scam." (*Id.*) Hanover told ReMax that it had 30 days to respond if it disagreed. (*Id.*)

On September 17, 2018, Hanover closed the file because it received "no pushback from [the] insured." (Doc. 23-4 at 4.)

Because Hanover declined to defend Plaintiffs in the Thuneys' lawsuit, Plaintiffs had to hire their own counsel and continued to do so until it "became no longer financially feasible." (Doc. 30 at 21.) Julie-Anne Helms later filed for bankruptcy. (*Id.*)

II. The Policy

The Policy is entitled "Miscellaneous Professional Liability Insurance Policy." (Doc. 23-1 at 6.) Section **[*5]** A of the Policy provides coverage for, *inter alia*, the payment of "damages and claim expenses because of a claim against you arising from a wrongful act in the rendering or failure to render professional services" (*id.*, emphases omitted), while Section B provides for the defense of covered claims: "We have . . . the exclusive right to defend any claim made under this policy . . . [but] [i]f a claim is not covered under this policy, we will have no duty to defend it." (*Id.* at 7, emphases omitted).

The Policy defines "professional services" as:
> [T]hose services described in Item 6. of the Declarations page [Real Estate Agent/Broker, Business Broker and/or Property Management] which you perform for others including advice given or services performed by an insured for others as a real estate agent, but solely when such services are performed on behalf of an insured as a real estate agency, and provided that the insured is appropriately licensed by the state in which the insured is doing business.

(*Id.* at 3, 27, emphases omitted.) The term "insured" includes the named insured (*i.e.*, ReMax) and, depending on the circumstances, individuals acting in the service of the named insured, such as **[*6]** independent contractors. (*Id.* at 9.)

The Policy contains several exclusions, including, as relevant here, exclusions for claims: (1) "[a]rising out of or resulting, directly or indirectly from any actual or alleged commingling, misappropriation or improper use of funds or monies" (*id.* at 11); (2) "[b]ased upon or arising out of . . . [a]ny conversion or improper use of funds or property" (*id.* at 28); and (3) "based upon, arising out of or in any way related to any transfer, payment or delivery of funds, money or property, by anyone, which was caused or induced by trick, artifice, or the fraudulent misrepresentation of a material fact including, but not limited to, social engineering, pretexting, phishing, spear phishing, or any other confidence trick" (*id.* at 31). The final exclusion will be referred to as the "False Pretenses Exclusion."

III. The Thuneys' Complaint

The Thuneys' first claim against Plaintiffs was for "Breach of a Confidential or Fiduciary Duty." (Doc. 23-2 ¶¶ 67-61.) In this claim, the Thuneys alleged that, as real estate agents, Plaintiffs had a "fiduciary relation[ship] of trust and confidence," which Plaintiffs breached "as more fully described herein." (*Id.* ¶¶ 68-69.) **[*7]** The factual allegations concerning Plaintiffs' conduct were as follows:

> ▪ On May 9, 2017, Plaintiffs "sent an unencrypted email with a copy of the Executed Contract for the property to Joe Thuney and advised him that the file had been sent to [the title company] to establish an escrow account and that Amanda Zalenski would be contacting them by phone." (*Id.* ¶ 25.)

> ▪ On May 11, 2017, Plaintiffs "sent an unencrypted email to the Thuneys with an Earnest Deposit Receipt from [the title company], a Seller Disclosure statement, and instructions on the home inspection." (*Id.* ¶ 29.)

The Thuneys also alleged that Plaintiffs "had knowledge about the dangers of using unencrypted emails and [chose] not to take reasonable steps to prevent the misappropriation of the confidential business information of the [Thuneys]." (*Id.* ¶ 71.)

The Thuneys' second claim against Plaintiffs was for "Negligence and Gross Negligence." (*Id.* ¶¶ 75-76.) In this claim, the Thuneys alleged that Plaintiffs owed the Thuneys a duty of care "to use reasonable care in protecting [them] from having their private financial information stolen and used to defraud [them]." (*Id.* ¶ 75.) The Thuneys further alleged that Plaintiffs "failed **[*8]** to use reasonable care in implementing encrypted email systems, by failing to follow or have processes and procedures in place which would protect the [Thuneys] from having their private financial information stolen from [Plaintiffs], by failing to detect the 'spoofed' email addresses used by the perpetrators of the fraud, by failing to detect an intrusion into [their] email or eSignature systems, by failing to provide effective and specific warnings to . . . customers about the dangers of escrow fraud, and by failing to meet [the] duty of care under *ARS § 13-2316* . . . to prevent computer fraud." (*Id.*)

III. Procedural History

On June 22, 2020, Plaintiffs filed a complaint in Maricopa County Superior Court. (Doc. 1-1 at 2-14.)

On September 3, 2020, Hanover removed the action to this

court. (Doc. 1.)

On January 28, 2021, Hanover filed the pending motion for summary judgment. (Doc. 23.)

On March 29, 2021, Plaintiffs filed two motions: (1) a motion under Federal Rule of Civil Procedure 56(d) to delay responding to Hanover's motion until it could conduct a deposition (Doc. 27); and (2) a "motion for [the] court to confirm deadlines and alternative motion for extension of time" (Doc. 28). In the latter motion, Plaintiffs argued that Hanover's **[*9]** first set of Requests for Admission ("RFAs") under Rule 36—to which Plaintiffs failed to timely respond— were improperly served and thus invalid because they had been sent to Plaintiffs' counsel's personal email address, not the email address listed on the Court's e-filing system. (Doc. 28.)

On April 26, 2021, the Court issued an order addressing both of Plaintiffs' motions. (Doc. 38.) On the one hand, the Court denied Plaintiffs' request for Rule 56(d) relief, holding that Plaintiffs had not "come close to satisfying the[] standards" for such relief because Plaintiffs' "declaration from . . . counsel [did] not explain, with any specificity, what Plaintiffs expect[ed] to learn during [the] deposition" or "why that missing information [was] necessary to avoid summary judgment." (Id. at 7.) On the other hand, the Court granted Plaintiffs' request for RFA-related relief and deemed Plaintiffs' belated responses to Hanover's RFAs timely. (Id. at 3-5.)

Hanover's summary judgment has since become fully briefed. (Docs. 30, 31.)[2]

## DISCUSSION

I. <u>Legal Standard</u>

HN1[] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment **[*10]** as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." Rookaird v. BNSF Ry. Co., 908 F.3d 451, 459 (9th Cir. 2018). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, 771 F.3d at 1125 (internal quotation marks omitted).

HN2[] A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." **[*11]** Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." Id. at 1103.

HN3[] "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Id. There is no issue for trial unless enough evidence favors the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). At the same time, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." Id. at 254. Thus, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." Id. at 255.

II. <u>Analysis</u>

Plaintiffs assert state-law claims for breach of contract, negligence, and bad faith premised on Hanover's failure to defend them against the Thuneys' **[*12]** claims. (Doc. 1-1.) Plaintiffs also seek punitive damages. (Id.) Hanover moves for summary judgment, arguing that various Policy exclusions barred coverage of the Thuneys' claims, so Hanover had no duty to defend Plaintiffs and thus did not breach the contract or act negligently or in bad faith. (Doc. 23.)

---

[2] Hanover requested oral argument (Docs. 23, 31) but this request is denied because the issues are fully briefed and oral argument would not aid the Court's decision. See Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

A. **Applicable Law**

HN4[↑] Under Arizona law, "[a]n insurance policy imposes on the insurer the duty to defend against claims potentially covered by the policy and the duty to indemnify the insured for covered claims." *Colo. Cas. Ins. Co. v. Safety Control Co., 230 Ariz. 560, 288 P.3d 764, 769 (Ariz. Ct. App. 2012)*. "A liability insurer's duty to defend, which is separate from and broader than its duty to indemnify, generally arises if the complaint filed against the insured alleges facts that fall within the policy's coverage." *Teufel v. Am. Family Mut. Ins. Co., 244 Ariz. 383, 419 P.3d 546, 548 (Ariz. 2018)*. "If the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume the defense of the action, but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation." *Kepner v. W. Fire Ins. Co., 109 Ariz. 329, 509 P.2d 222, 224 (Ariz. 1973)* (internal quotation marks omitted). "The insurance policy language controls the scope and extent of an insurer's duty to defend." *Lennar Corp. v. Auto-Owners Ins. Co., 214 Ariz. 255, 151 P.3d 538, 543 (Ariz. Ct. App. 2007)* (internal [*13] quotation marks omitted). If the "alleged facts ostensibly bring the case within policy coverage but other facts which are not reflected in the complaint plainly take the case outside the policy coverage," the insurer does not have an "absolute duty to defend." *Kepner, 509 P.2d at 224*. See also *Teufel, 419 P.3d at 550* ("The insurer may investigate the matter . . . and refuse to defend based on facts discovered outside the complaint that take the case outside coverage.").

HN5[↑] "The interpretation of an insurance contract is a question of law . . . ." *Sparks v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 647 P.2d 1127, 1132 (Ariz. 1982)*. An insurance policy is "read as a whole, so as to give a reasonable and harmonious effect to all of its provisions." *Charbonneau v. Blue Cross of Wash. & Alaska, 130 Ariz. 160, 634 P.2d 972, 975 (Ariz. Ct. App. 1981)*. "Provisions of insurance policies are to be construed in a manner according to their plain and ordinary meaning." *Sparks, 647 P.2d at 1132*. "[W]here the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it [beyond] its plain and ordinary meaning or add something to the contract which the parties have not put there." *D.M.A.F.B. Fed. Credit Union v. Emps. Mut. Liab. Ins. Co. of Wis., 96 Ariz. 399, 396 P.2d 20, 23 (Ariz. 1964)*. "An interpretation of a contract which renders it unreasonable should be avoided." *Custom Roofing Co. v. Transamerica Ins. Co., 120 Ariz. 196, 584 P.2d 1187, 1189 (Ariz. Ct. App. 1978)*.

HN6[↑] If a clause in an insurance contract "appears ambiguous, [courts] [*14] interpret it by looking to legislative goals, social policy, and the transaction as a whole." *First Am. Title Ins. Co. v. Action Acquisitions, LLC, 218 Ariz. 394, 187 P.3d 1107, 1110 (Ariz. 2008)*. "If an ambiguity remains after considering these factors, [courts] construe it against the insurer." *Id.* This rule applies "with even greater force where the ambiguity appears in an exclusionary clause." *Roberts v. State Farm Fire & Cas. Co., 146 Ariz. 284, 705 P.2d 1335, 1336-37 (Ariz. 1985)*. "In determining whether an ambiguity exists in a policy, the language should be examined from the viewpoint of one not trained in law or in the insurance business." *Sparks, 647 P.2d at 1132*. "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." *Keggi v. Northbrook Prop. & Cas. Ins. Co., 199 Ariz. 43, 13 P.3d 785, 788 (Ariz. Ct. App. 2000)*.

B. **The Parties' Arguments**

Hanover argues that it did not owe a duty to defend Plaintiffs in the Thuneys' lawsuit because the Thuneys' claims against Plaintiffs "exist only because the funds which [the Thuneys] intended to be used for purchase of a home were transferred elsewhere—i.e., misappropriated, improperly used, converted, transferred, paid, or delivered—by individuals who employed forged emails and payment instructions and impersonated a title company representative—i.e., by trick, artifice, or fraudulent misrepresentations of material fact." (Doc. [*15] 23 at 9-13.) According to Hanover, it is irrelevant that the Thuneys "cast their claims in terms of negligence . . . or breach of some alleged fiduciary duty" because "those claims still arise out of, result directly or indirectly from, are based upon, and/or . . . relate to the" acts listed in the exclusions. (*Id.*) Thus, Hanover argues, it did not breach the Policy or act unreasonably in refusing to defend Plaintiffs. (*Id.*)

Plaintiffs respond that the Thuneys' claims were for improperly handling the Thuneys' confidential information and are thus comparable to a malpractice claim, as opposed to a claim for misappropriating funds or committing fraud. (Doc. 30 at 7-15.) Plaintiffs further argue that the Thuneys' claims were based on vague and unspecified allegations of wrongdoing, so there could have been portions of those claims that fell outside the Policy's exclusions. (*Id.*) In other words, Plaintiffs argue that the Thuneys' allegations could be construed as claims against Plaintiffs in a professional capacity that represent an "independent covered claim." (*Id.*) Last, Plaintiffs argue that the language "based upon, arising out of or in any way related" in the False Pretenses Exclusion [*16] is so broad that it is ambiguous and, thus, should be construed against Hanover. (*Id.*)

Hanover replies that the Thuneys' claims necessarily "relate to" and "arise out of" the loss of the deposit because no other damage is identified in the complaint. (Doc. 31 at 4-5.) Hanover also argues that the phrase "based upon, arising out of or in any way related" isn't ambiguous. (*Id.* at 6-7.) Hanover further argues that it doesn't matter whether Plaintiffs "personally and actually engaged in the Excluded Conduct" because the Thuneys' complaint alleges that Plaintiffs' conduct was a "but for" cause of the injury. (*Id.* at 7-8.) As for the False Pretenses Exclusion, Hanover argues that it isn't limited to acts committed by the insured and extends to "anyone," which would include the fraudsters in this case. (*Id.* at 8-9.)

C. **Merits**

As an initial matter, Hanover argues that, because Plaintiffs failed to respond to its RFAs, Plaintiffs' resulting admissions compel the entry of summary judgment in its favor. (Doc. 23 at 7.) But in their later-filed responses, Plaintiffs denied all of Hanover's RFAs (Doc. 30 at 24-27) and the Court has deemed those responses timely (Doc. 38).

Turning to the merits, the **[*17]** Court will focus on the parties' arguments relating to the False Pretenses Exclusion because it is dispositive of all of Plaintiffs' claims. The Policy excludes coverage for "claims based upon, arising out of or in any way related to any transfer, payment or delivery of funds, money or property, by anyone, which was caused or induced by trick, artifice, or the fraudulent misrepresentation of a material fact including, but not limited to, social engineering, pretexting, phishing, spear phishing or any other confidence trick." (Doc. 23-1 at 31.) Plaintiffs concede that "claims of cause of loss of the funds asserted against those alleged to be responsible would be a proper subject matter of the False Pretenses Exclusion[]" (Doc. 30 at 13) but dispute whether the exclusion extends to the Thuneys' claims against Plaintiffs.

The Court agrees with Hanover that the False Pretenses Exclusion unambiguously applies under these circumstances. The language of the exclusion is not limited to claims arising out of the insured's *own* tricks, artifices, and fraud. Instead, it extends to a "payment . . . of funds . . . by anyone," which would encompass claims arising out of the Thuneys' payment of funds **[*18]** to the fraudsters. Similarly, the language "caused or induced by trick, artifice, or the fraudulent misrepresentation of a material fact" is not limited to fraud committed by the insured. Notably, many other exclusions in the Policy have such limiting language, which makes the absence of such language in the False Pretenses Exclusion significant.[3] Additionally, construing the False Pretenses Exclusion as limited to an insured's tricks, artifices, and fraud would render it superfluous, because a different exclusion already bars coverage of claims arising out of "any insured" "[c]omitting any intentional, dishonest or fraudulent act or omission." (*Id.* at 10, emphasis omitted.) *HN7*[ ] "In interpreting an insurance policy [courts] attempt to harmonize and give effect to all provisions so that none is rendered meaningless." *Am. Fam. Mut. Ins. Co. v. White, 204 Ariz. 500, 65 P.3d 449, 453 (Ariz. Ct. App. 2003)*. Plaintiffs' construction is thus untenable. *Cf. id.* ("violation of law" exclusion was not limited to intentional criminal acts because it would render a separate "intentional acts" exclusion meaningless).

Nor is there any merit to Plaintiffs' alternative argument that the Thuneys' claims fall outside the scope of the False Pretenses Exclusion **[*19]** because the claims are based on vague, nonspecific allegations of wrongdoing. The Thuneys' breach of fiduciary duty claim identifies Plaintiffs' alleged use of unencrypted email as the basis for the claim. The claim states that Plaintiffs "breached [the] duty of trust and confidence as more fully described herein." (Doc. 23-2 ¶ 69.) The word "herein" suggests that the alleged breach of fiduciary duty arose out of allegations specified in the complaint, and the only allegations directed at Plaintiffs arise out of the use of unencrypted email. (*Id.* ¶ 25 ["[Plaintiffs] sent an unencrypted email with a copy of the Executed Contract for the property to Joe Thuney . . . ."]; *id.* ¶ 29 ["[Plaintiffs] sent an unencrypted email to the Thuneys with an Earnest Deposit Receipt . . . ."].) The claim links those allegations to the Thuneys' damages. (*Id.* ¶ 70 ["As a direct and proximate result of that breach, the [Thuneys] have been damaged in the amount of $119,555.73 and for $2,000 that [the title company] insisted be paid to the sellers of the house."].) The other award the Thuneys sought in the breach of fiduciary claim was for punitive damages, but this was again related to the use of unencrypted **[*20]** email—the Thuneys alleged that Plaintiffs "had knowledge about the dangers of using unencrypted emails and [chose] not to take reasonable steps to prevent the misappropriation of the confidential business information of the [Thuneys]." (*Id.* ¶ 71.) At bottom, the breach of fiduciary claim is not tied to some unspecified abstract violation of Plaintiffs' duties as a realtor but instead is based entirely on Plaintiffs' use of unencrypted email, which in turn is related to the transfer of

---

[3] *See, e.g.*, Doc. 23-1 at 11 ("16. Arising out of *your* advising . . . ."); *id.* at 28 ("This policy does not apply to claim(s) . . . [b]ased upon or arising out of . . . b) The *insured's* inability or refusal to pay or collect premium, or tax monies . . . [or] c) Any promises . . . made *by the insured* . . . as to the current and/or future value of the property . . . .") (emphasis added).

funds that was induced by trick or artifice.

Analyzing the Thuneys' negligence claim, which contains more specific allegations, yields the same result. The negligence claim alleges that Plaintiffs "failed to use reasonable care in implementing encrypted email systems, by failing to follow or have processes and procedures in place which would protect the [Thuneys] from having their private financial information stolen . . . , by failing to detect the 'spoofed' email addresses used by the perpetrators of the fraud, by failing to detect an intrusion into [their] email or eSignature systems, by failing to provide effective and specific warnings to its customers about the dangers of escrow fraud, and by failing **[\*21]** to meet [the] duty of care . . . to prevent computer fraud." (*Id.* ¶ 75.) The Thuneys' damages (loss of the funds and the earnest money) were alleged to be a "direct and proximate result of [Plaintiffs'] negligence and gross negligence." (*Id.* ¶ 76.) This claim, again, ties all of Plaintiffs' alleged negligent conduct directly to the Thuneys' loss of funds to the fraudsters.

Both of the claims against Plaintiffs are thus, at the very least, "related to" the fraud perpetrated against the Thuneys, which means they fall within the False Pretenses Exclusion. *HN8*[] Although Plaintiffs contend the phrase "related to" is ambiguous and must be construed against Hanover, ambiguous provisions are only "construed against the insurer if they are actually ambiguous," which means the language must be "susceptible to different constructions." *Salerno v. Atl. Mut. Ins. Co., 198 Ariz. 54, 6 P.3d 758, 762 (Ariz. Ct. App. 2000)*. *See also Sec. Ins. Co. of Hartford v. Andersen, 158 Ariz. 426, 763 P.2d 246, 248 (Ariz. 1988)* ("The[] rules of construction [against the drafter in the event of ambiguity] apply . . . only where there is ambiguity."). Plaintiffs have not identified another construction to which the challenged language is susceptible, and Plaintiffs have not offered any authority for the proposition that an exclusion's breadth alone is enough to render it ambiguous. **[\*22]**

Because the claims against Plaintiffs fall within the False Pretenses Exclusion, Hanover had no duty to provide a defense to Plaintiffs with respect to those claims. (Doc. 23-1 at 7 ["If a claim is not covered under this policy, we will have no duty to defend it."], emphasis omitted.) Hanover thus did not breach the insurance contract. *See also Kepner, 509 P.2d at 224* ("[I]f the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation [to defend].") (internal quotation marks omitted). Plaintiffs' bad faith claim fails for the same reason—Hanover did not act unreasonably in refusing to defend Plaintiffs, and Plaintiffs have not proffered any argument or evidence that Hanover acted unreasonably in the manner in which it declined to defend the lawsuit. *Acosta v. Phx. Indem. Ins. Co., 214 Ariz. 380, 153 P.3d 401, 404 (Ariz. Ct. App. 2007)* (*HN9*[]) "The tort of bad faith has two elements: first, that the insurer acted unreasonably towards its insured and, second, that the insurer acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it.") (internal quotation marks omitted). Finally, Plaintiffs' claim for compensatory and statutory damages falls with the unsuccessful breach of contract and **[\*23]** bad faith claims, as does Plaintiffs' claim for punitive damages. *Quiroga v. Allstate Ins. Co., 151 Ariz. 127, 726 P.2d 224, 226 (Ariz. Ct. App. 1986)* (*HN10*[]) "[T]he right to an award of punitive damages must be grounded upon a cause of action for actual damages."); *Brill v. Lawrence Transp. Co., 2018 U.S. Dist. LEXIS 215847, 2018 WL 6696815, \*2 (D. Ariz. 2018)* ("Under Arizona law, a separate cause of action does not exist for punitive damages . . . .").

Accordingly,

**IT IS ORDERED** that Hanover's motion for summary judgment (Doc. 23) is **granted**. The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 20th day of August, 2021.

/s/ Dominic W. Lanza

Dominic W. Lanza

United States District Judge

---

**End of Document**